## Burke v. Rice

*William A. Weiler,* for plaintiff.
*Phillip J. Binotto,* for defendants.

RODGERS, *S.J.,* March 7, 1991—Plaintiff, Gene Burke, a real estate agent and broker, having appealed from the award of arbitrators finding in favor of defendant sellers, Charles E. Rice Jr. and Mary Alice Rice, his wife, this case was scheduled for non-jury trial before this court. The parties agreed this court could make its decision on the basis of the stipulation and agreement of the parties dated September 26, 1990, as follows:

(1) Sometime toward the latter part of July 1989, plaintiff approached defendant Charles E. Rice Jr. at his place of employment at the Meadows Racetrack and inquired whether he had a certain farm in Scenery Hill for sale.

(2) Plaintiff at that time represented to Mr. Rice that he had authority from a prospective purchaser authorizing him to procure a listing agreement on a farm in Washington County.

(3) Thereafter, defendants entered into a listing agreement dated August 3, 1989 which provided, inter alia, for a real estate commission of 8 and one-half percent; a copy of said agreement is attached hereto as joint exhibit A.

(4) Thereafter, plaintiff produced for signature a real estate sales agreement dated August 9, 1989 which provided for a sales price for the property in question of $150,000.

(5) Defendants did not initially agree to the aforesaid price and accordingly the sales price was modified to $155,000 and plaintiff agreed to reduce his sales commission to 4 and one-quarter percent.

(6) With these two changes being made, defendants executed a real estate sales agreement for the property in question, agreeing to sell said property to Richard N. Horton. A true and correct copy of the real estate sales agreement and the amended listing agreement is attached hereto as joint exhibits B and C respectively. In accordance with the agreement of sale, hand money was deposited with plaintiff and held in escrow by him.

(7) Both the listing agreement and the real estate sales agreement were prepared by plaintiff and were on forms routinely used by him in real estate transactions.

(8) Thereafter, the parties, by way of a letter dated September 1, 1989, extended the closing date on the property in question from September 15, 1989 to October 10, 1989. A true and correct copy of the aforesaid September 1, 1989 letter is attached hereto as joint exhibit D.

(9) Thereafter, defendants were advised by attorney Joseph Ludwig, representing Richard N. Horton, by letter dated September 11, 1989, that the agreement of sale was void and he requested a return of the hand money. The aforesaid letter

contained various reasons and arguments as to why Mr. Ludwig felt the agreement was appropriately being declared void.

(10) Accordingly, defendants sought legal counsel as to what their various options were under the agreement.

(11) Following a series of negotiations, defendants entered into an agreement with Mr. Horton releasing him from any liability under the agreement in question in consideration for the payment to them of the additional sum of $7,500. The aforesaid settlement was made on October 17, 1989 pursuant to a written release, a copy of which is attached as joint exhibit E. Pursuant to said release, payment was made to the defendants by way of a check dated November 4, 1989. A copy of said check is attached as joint exhibit F.

(12) In September 1989, plaintiff and his counsel discussed with the buyers' attorney the possibility of a settlement of the matter, but the actual settlement was negotiated and consummated by defendants and their attorney.

(13) Thereafter, upon plaintiff and defendants being unable to reach an agreement concerning the payment of any additional funds to plaintiff, the within lawsuit was filed.

(14) The parties stipulate and agree that if plaintiff is successful in the within lawsuit, he would be entitled to recover $2,837.50, plus interest from October 17, 1989, the date payment was made to defendants. Defendants have counterclaimed for the sum of $3,750, plus interest, on the basis that no real estate commission is owed in this matter, under the circumstances and agreements in question.

(15) The property in question has been relisted for sale through other realtors and as of this date has yet to be sold.

The parties attached as joint exhibits the original listing agreement; the amended listing agreement; the agreement of sale; the letter of September 1, 1989 agreeing that the settlement date be extended from September 15, 1989 to October 10, 1989; a written release of the buyer, Richard N. Horton, dated October 17, 1989, in consideration of the payment of $15,000; the check of Joseph M. Ludwig, attorney for the buyer to defendants, in this case the sellers, dated November 4, 1989 in the amount of $7,500. This court, in addition to the foresaid stipulation and exhibits, has considered the briefs filed by counsel for the parties.

Counsel for plaintiff real estate broker and for defendant sellers agree there is no binding authority on the issue before this court.

Plaintiff frames the issue as follows:

"Is plaintiff entitled to his real estate commission only from the hand money paid or from all monies paid on account?"

Defendants claim plaintiff is not entitled to any commission because he caused the buyer to default and, in any event, is entitled to commission only on the earnest money as provided in the sales and listing agreements.

In addition to the facts as stipulated, this court finds that the parties are in agreement that the buyer, Richard N. Horton, at the time the agreement of sale was signed on August 9, 1989, made an earnest money deposit to be held in escrow by plaintiff broker, Gene Burke, in the amount of $7,500, and further agree that upon the default of the buyer one-half of this amount or $3,750 was paid by plaintiff broker to defendant and the balance of $3,750 was retained by plaintiff.

The parties do not agree on the circumstances of the division of the earnest money. Plaintiff broker,

Burke, claims the division of the earnest money was by mutual agreement with the understanding that the broker would recover the balance of his commission from additional monies to be paid by the buyer to the sellers.

Defendants contend that plaintiff broker unilaterally withheld the $3,750 from the earnest money deposited without the consent of defendant sellers, and upon the broker's representation that the aforesaid sum was in full satisfaction of the commission due him.

The law generally is set forth in the case of *Shumaker v. Lear,* 235 Pa. Super. 509, 345 A.2d 249 (1975):

"As a general rule a real estate broker becomes entitled to his commission when he procures a purchaser who is ready, willing and able to buy upon the agreed terms. When the broker completes this task his commission has accrued, and as to the broker the sale is treated as constructively consummated. Additionally, if the vendor accepts the purchaser procured by the broker or if the vendor enters into a binding and enforceable agreement of sale, the broker's commission has been earned without reference to the outcome of the transaction. Having accepted the buyer, the owner will be estopped from later objecting to the buyer's ability to complete the transaction on the settlement date.

"The general rule, of course, can be changed by contract. If the parties expressed their intention to make the commission contingent or conditional, such as by requiring an actual sale, the broker does not earn his commission until the condition or contingency has been satisfied. In the case before us the brokerage agreement, prepared by the broker,

does not declare the commission to be contingent or conditional and, thus, the general rule remains applicable.

"The general rule which accrues the broker's commission when a purchaser enters into a contract with the seller, however, requires a binding and enforceable contract. When the contract is conditional, the broker earns his commission only when the condition is fulfilled. . ..

"The broker's right to a commission remained contingent upon fulfillment of the condition precedent, and the condition was not fulfilled. The sellers having acted in good faith and having done nothing to prevent the fulfillment of the condition, the broker is not entitled to recover his commission. . .."

At issue in the case at bar is the correct interpretation of the provision of listing agreement and the agreement of sale concerning the agent's fee in the event of buyer default. The provision in the listing agreements read as follows: *"Agent's fee in the event of buyer default* 50 percent of/from any monies paid on account."

The provision in the agreement of sale said this:

"(15) Default. In the event of default:

"(A) By buyer: Seller may, at seller's option, elect to:

"(1) retain the earnest money and all monies paid on account of the purchase price as liquidated damages, in which event this agreement shall become null and void and both parties shall thereupon be released of all further liability hereunder. It is hereby agreed that, without resale, seller's damages will be difficult of ascertainment and that the earnest money and all monies paid on account of the purchase price constitute a reasonable liquidation thereof and not a penalty, or (2) apply said monies

toward seller's damages, including, but not limited to, loss of bargain, consequential damages and attorney's fees, provided, however, that no such election of (A)(2) hereof shall be final or exclusive until full satisfaction shall have been received.

"Further, in the event of default by buyer, all monies paid on account by buyer shall be divided equally between seller and broker, but in no event shall the sum paid to broker be in excess of the commission due broker if no default had occurred."

In the case of *Perkinson v. Burford,* 623 S.W.2d 30, 34 (Mo. 1981), the court said this:

"Another matter which must be considered is Bakewell's request for its real estate commission. The listing contract with the Perkinsons provided that Bakewell was to receive 6 percent of the selling price of the property if it produced a 'willing and able purchaser.' The sale contract signed by Mrs. Burford, the Perkinsons and Bakewell's agent and accompanied by a $2500 earnest money deposit specifically provided:

" '[I]f sale be not closed by date fixed therefore owing to failure of performance by purchaser, earnest deposit shall be forfeited by purchaser but purchaser shall nevertheless be bound to fulfillment of the contract if so determined by seller, but this shall not entitle purchaser to enforce sale. Forfeited earnest deposit shall first go toward reimbursing expenses of agent incurred in this transaction and balance to go one-half to seller, and one-half to agent in lieu of commission.' (emphasis added)

"It is a general rule that a real estate broker has earned his commission when he produces a buyer whether or not the buyer pays the purchase price. *Chamberlain v. Amick,* 210 S.W.2d 528, 530 (Mo. App. 1948). It is on this basis that Bakewell seeks to recover 6 percent of the $500,000 contract price. But the general rule may be qualified by further contract

provision, *Chamberlain v. Amick,* 210 S.W.2d at 529-30, with such modification binding on the owner and broker when each has resulting benefits and detriments from the modification. 12 C.J.S. *Brokers* §125 (1980). Also see *Willhite v. Marlow Adjustment Inc.,* 623 S.W.2d 254 (Mo. App. 1981), on requirement of consideration for modification of contract.

"The question of how and when a broker becomes entitled to his commission and the amount thereof depends upon the contract. *Huber v. Gershman,* 300 S.W.2d 501, 505 (Mo. 1957); *McIntosh v. Frisinger,* 507 S.W.2d 419, 425 (Mo. App. 1974). In this case, the sales contract modified the original listing contract regarding the real estate commission. By executing it with the Perkinsons and Mrs. Burford, Bakewell effectively limited its fee on default of the purchaser to one-half the earnest money deposited rather than 6 percent of the sales price. . . ."

In the case at bar, while the listing agreement provides that the agent's fee in the event of buyer default shall be 50 percent of "any monies paid on account," the sales agreement provides that in the event of default by the buyer, the seller may elect to "retain the earnest money and all monies paid on account of the purchase price. . ."

Both the listing agreement and sales agreement were prepared by plaintiff broker on standard forms of the Pennsylvania Association of Realtors and of the Greater Pittsburgh Board of Realtors.

The standard form of agreement of sale (paragraph 6) provides not only for earnest money deposit to be held in escrow, but also provides for additional earnest money deposit and additional financing in accordance with paragraph 24 which might, of course, include additional installment payments prior to final settlement.

154

In the case at bar, the only provisions in regard to payment of the consideration was that $7,500 earnest money was to be paid by the buyer and held in escrow by the broker upon the signing of the agreement, and additional financing per paragraph 24 in the amount of $147,500.

Paragraph 24, in part, provided that the buyer obtain a mortgage at regular rates for 85 percent of the purchase price.

Only the $7,500 earnest money deposit was paid in accordance with the terms of the agreement.

On November 4, 1989, the attorney for the buyer, Horton, paid to defendant sellers an additional sum of $7,500 in accordance with the release, duly executed by the sellers to the buyer, reciting consideration of $15,000, ($7,500 earnest money from agreement of sale dated August 9, 1989, with the Rices, and $7,500 by check of Joseph M. Ludwig at closing of the Johnsen real estate).

The stipulation of the parties agree that the payment of the additional $7,500 was made after the buyer had notified the seller that the agreement of sale was void and requested a return of the hand or earnest money, and that while the plaintiff broker and his attorney discussed with the buyers' attorney the possibility of a settlement of the matter in September 1989, the actual settlement was negotiated and consummated by defendant sellers and their attorney.

It is, of course, hornbook law that for breach of agreement of sale of realty, the seller may maintain an action for the purchase money in the nature of specific performance, 42 P.L.E. §173 (1960).

However, in the case at bar, defendant sellers agreed to accept the sum of $15,000 in settlement of their dispute with the buyer and to retain ownership of the real estate.

It is, of course, true that as a general rule when a buyer defaults after an agreement has been fully executed and the seller, instead of enforcing the sales agreement, releases the buyer and agrees to rescind the contract, the broker who procured the purchaser is nevertheless entitled to be paid his commission. *Zitzelberger v. Salvatore,* 312 Pa. Super. 402, 458 A.2d 1021 (1983).

In the case at bar, however, by the terms of the agreement of sale, the seller and their broker agreed that upon buyer's default only the earnest money and monies paid *on account of the purchase price* shall be divided equally between the seller and broker not, however, to exceed the commission due the broker if no default had occurred. (emphasis supplied)

Prior to termination of the agreement of sale, it is the broker's duty to retain all monies paid on account of the purchase price in escrow. Cf. *Leach v. State Real Estate Commission,* 25 Pa. Commw. 474, 360 A.2d 269 (1976).

However, this court finds that the $7,500 paid by the buyer's attorney to the seller as a result of the efforts of defendant sellers and their attorney was in compromise of a disputed claim for damages by the seller against the buyer and was not a payment made voluntarily by the buyer to the sellers on account of the purchase price in accordance with the terms of the agreement of sale.

If plaintiff and defendants had agreed to the payment of the broker's commission now claimed by the broker, plaintiff broker, who prepared both the listing agreement and agreement of sale, could have easily provided that, in the event of default by the buyer, *all monies paid* by the buyer should be divided equally between the seller and broker not in excess of the commission due the broker if no default had occurred. (emphasis supplied)

It is clear, in the instant case, that the payment of the additional $7,500 was a result of the efforts of defendant sellers and their attorney and not by reason of any effort on the part of plaintiff broker.

If plaintiff broker truly believed he was entitled to additional commission over and above the $3,750 which he retained, it is difficult for this court to understand why the plaintiff broker did not retain the full amount of $7,500 in his escrow account pending termination of the dispute between sellers and buyer.

However, it is also difficult for the court to understand, if defendant sellers believed that the broker had caused the buyer to default on the agreement, why defendant sellers accepted division of the earnest money with the broker. In any event, the court finds that the sellers failed to prove that the default by the buyer was proximately caused by plaintiff broker. Accordingly, defendants' counterclaim will also be dismissed.

## DECISION OF THE COURT

And now, March 7, 1991, the decision of the court is in favor of defendants, Charles E. Rice Jr. and Mary Alice Rice, his wife, and against plaintiff, Gene Burke, and against defendants, Charles E. Rice Jr. and Mary Alice Rice, his wife, as plaintiffs in counterclaim, and for plaintiff, Gene Burke, as defendant in counterclaim.