James Leroy Leach, Appellant *v.* State Real
Estate Commission, Appellee.

Argued May 7, 1976, before President Judge Bow-
MAN and Judges MENCER and ROGERS, sitting as a
panel of three.

*Thomas P. Cole, II,* with him *Boyle, Boyle & Cole,* for appellant.

*Jeffrey G. Cokin,* Deputy Attorney General, for appellee.

OPINION BY JUDGE MENCER, July 15, 1976:

James Leroy Leach (appellant) brings this appeal to contest the suspension of his real estate broker's license for a period of 6 months. The State Real Estate Commission (Commission) issued its suspension order on November 24, 1975, after hearings held following a complaint filed by Mr. and Mrs. Donald Sherred (complainants), charging appellant with misconduct in regard to two related real estate transactions.

The Commission cited appellant for violations of Section 10, subsection (a), paragraphs (1), (2), (5), (7), (11)(i), and (11)(iii) of the Real Estate Broker's License Act[1] (Act). The Commission found violations of paragraphs (1), (2), (7), and (11)(i), which provide:

"(a)   The commission may, upon its own motion, and shall, promptly, upon the verified complaint in writing of any person setting forth specifically the wrongful act or acts complained of, investigate any action or business transaction of any licensed real estate broker or real estate salesman; and shall have the power temporarily to suspend or permanently to revoke licenses theretofore issued by the department, under the provisions of this act, at any time when, after due proceedings as hereinafter provided, it shall find the holder thereof to have been guilty

"(1)   Of knowingly making any substantial misrepresentation; or

---

[1] Act of May 1, 1929, P.L. 1216, *as amended,* 63 P.S. §440(a)(1), (2), (5), (7), (11)(i), (11)(iii).

"(2)   Of knowingly making any false promise of a character likely to influence, persuade or induce; or

. . . .

"(7)   Of any act or conduct in connection with a real estate transaction which demonstrates incompetency, bad faith, or dishonesty;

. . . .

"(11)   Of failure to comply with the following requirements:

"(i)   All deposits or other moneys accepted by every person, copartnership, corporation or association, holding a real estate broker's license under the provisions of this act, must be retained by such real estate broker pending consummation or termination of the transaction involved, and shall be accounted for in the full amount thereof at the time of the consummation or termination."

Our scope of review in this case is limited to determining whether the Commission abused its discretion, committed an error of law, or made findings of fact not based on substantial evidence. *Meth v. State Real Estate Commission,* 14 Pa. Commonwealth Ct. 203, 321 A.2d 221 (1974).

The violations of paragraphs (1) and (2) are based solely on the Commission's findings which read:

"4.   Respondent [appellant here] did represent and promise that certain significant contingencies would be included in an agreement of sale signed by Complainants on August 9, 1971.   Sellers under such agreement were Mr. and Mrs. Bruno DeAugustino.

"5.   Respondent did fail to include contingencies in the agreement signed August 9, 1971 to provide for the following though he represented and promised that these would be included:

"(a)   buyers' securing a rehabilitation loan and the terms thereof

"(b)   buyers' securing a mortgage and the terms thereof

"(c)   buyers' securing a bid on the repair of such property not to exceed a specific amount

"(d)   buyers' responsibilities under the agreement of August 9, 1971, to be conditioned upon the consumation [sic] of a sale between buyers and Mr. and Mrs. William Fisher pursuant to an agreement signed on August 6, 1971."

While there is substantial evidence to support these findings, they are insufficient as a matter of law to establish that appellant *knowingly* misrepresented his intention to include the contingencies in the DeAugustino sales agreement or that his promises to do so were false at the time.  The complainants' testimony indicates that appellant did not attempt to conceal from the DeAugustinos that the complainants wanted the contingencies included.   However, the contingencies were admittedly not written into the DeAugustino sales agreement.   Whether this was through the agency of negligence, inadvertance, or active malfeasance is not shown in the Commission's findings of fact.   Since the Act is penal in nature, it must be strictly construed.  *Pennsylvania State Real Estate Commission v. Keller,* 401 Pa. 454, 165 A.2d 79 (1960).  Therefore, without the necessary finding that appellant *knew his representations to be false,* a conclusion that appellant violated paragraphs (1) and (2) cannot stand.

The violations based on paragraphs (7) and (11) (i) arose out of a related transaction involving complainants as potential purchasers of the property of Mr. and Mrs. William Fisher. The controversy centers on whether the appellant could reasonably have believed that complainants had breached their sales agreement by refusing to attend settlement.  Appellant asserts that he was justified in acting on the basis

.that complainants' deposit was forfeit as liquidated damages for breach of contract. We emphasize that the question before us is not whether complainants *actually* breached the sales agreement, thus terminating the transaction. Such matters are properly the subject of an action in assumpsit, rather than a license suspension proceeding. The only issue here is whether appellant, under the circumstances, acted contrary to the strictures imposed by the Act. We hold that he did not.

The facts surrounding the Fisher transaction are somewhat unclear; however, the general outlines may be summarized. Complainants originally requested appellant to locate a large house suitable for use as an income-producing rental property. In due course, appellant showed complainants the Fisher property in Jeannette, Pennsylvania. Complainants evinced a desire to purchase the property if they could obtain a federally financed loan[2] to correct the numerous violations of the Jeannette Municipal Code which beset the property. Accordingly, appellant drafted a sales agreement, subject to complainants' ability to secure a suitable mortgage, to obtain a bid for rehabilitation falling below the maximum amount which could be borrowed under the Federal Code Enforcement Program and, of course, subject to their ability to obtain a code enforcement rehabilitation loan.

Appellant succeeded in finding a contractor who entered a bid within the limits allowed. He also helped to arrange a mortgage loan which was approved on October 21, 1971 and was also conditioned on the ability of complainants to obtain a federal rehabilitation loan. At this point, the record becomes some-

---

[2] Under the Code Enforcement Program. *See* 24 C.F.R. §500.4 (1975).

what murky. However, it appears that appellant and complainants were given conflicting information concerning the latter's ability to qualify for a federal loan. Complainants apparently believed that it would be futile for them to apply for the loan,[3] while appellant, relying on other information, persisted in requesting them to apply. Complainants have not applied for the federal loan.

Complainants were notified of a timely settlement conference planned by the Fishers but, on the advice of counsel, refused to attend. Sometime following the aborted settlement, the Fishers asked appellant to distribute $500 to them from complainants' "hand money" held in an escrow account. This represented one-half the deposited funds which, under the sales agreement, were to be liquidated damages in the event of a breach. Appellant distributed $500 to the Fishers and, per his agreement with them, kept the remaining $500 for himself and so informed complainants.

The appellant does not contest the fact that he distributed the money. The Commission, however, failed to find whether appellant in good faith believed the failure of complainants to attend the settlement was a breach of contract "terminating" the transaction and triggering the liquidated damages provision of the sales agreement. Without such a finding, the conclusion that appellant violated paragraph (11)(i) cannot stand.

The remaining finding of a violation of paragraph (7) for "any act in connection with a real estate transaction which demonstrates incompetency, bad faith, or dishonesty" likewise cannot stand. The most that is

---

[3] The dispute as to complainants' eligibility under the applicable federal regulations has not been resolved. At issue is whether the complainants must occupy the property as well as own it in order to be eligible.

shown from the facts at hand is that a genuine dispute exists as to whether the transaction could have or should have been completed. If complainants had persisted in their application for a federal loan, as appellant requested that they do, it is likely that no dispute would now exist. We will not deprive a broker of his license simply because, in a good faith effort to protect his rights in a legal dispute, he *may* be found to have misconstrued the law or federal regulations.[4] To do so would be to hold a real estate broker to a higher standard of knowledge and care than is generally required of attorneys.[5]

### ORDER

Now, this 15th day of July, 1976, the order of the State Real Estate Commission suspending the real estate broker's license of James Leroy Leach for a period of 6 months is hereby reversed.

---

[4] We of course express no opinion as to the complainants' ability to recover from appellant in assumpsit.

[5] *See generally* 7 C.J.S. *Attorney and Client* §§140-43 (1937, Supp. 1976).