**Joan Beyer QUIGLEY, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Argued Oct. 15, 2008.

Decided Feb. 4, 2009.

---

Carl A. Parise, Pittsburgh, for appellant.

Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, SIMPSON, Judge, LEAVITT, Judge, BUTLER, Judge.

OPINION BY Judge BUTLER.

Joan Beyer Quigley (Quigley) filed a notice of appeal from the November 16, 2007 order of the Court of Common Pleas of Allegheny County dismissing her appeal of the Pennsylvania Department of Transportation, Bureau of Driver Licensing's (PennDOT) one-year suspension of her operating privileges pursuant to Section 1547 of the Vehicle Code.[1]

On February 16, 2007, Quigley was involved in a one-vehicle accident. Officer David Arnold was the first officer to arrive on the scene of the accident. Based on Officer Arnold's observations at the scene and the administration of field sobriety tests, Quigley was arrested for driving under the influence (DUI). Upon arrival at the Bethel Park police station, Quigley was asked to submit to a breathalyzer test. Officer Arnold read the chemical testing warnings required by Section 1547(b) of the Vehicle Code to Quigley as they appeared on the August 2006 DL–26 Implied Consent Form (DL–26 Form).[2] Officer Arnold alleged that Quigley did not want to take the test, instead insisting that she wanted to talk to her husband.

On March 26, 2007, PennDOT notified Quigley in writing that her operating privileges would be suspended for one year for failing to submit to chemical testing. Quigley appealed to the Court of Common Pleas of Allegheny County, raising the issue of whether she had been properly warned that her operating privileges would be suspended. On November 16, 2007, the trial court dismissed her appeal, finding that she had been properly warned, and that she had not proved that she was confused by the language on the DL–26

1. 75 Pa.C.S. § 1547. Section 1547(b)(1)(i) of the Vehicle Code, commonly referred to as the "Implied Consent Law," authorizes suspension of the driving privileges of a licensee where the licensee is placed under arrest for driving under the influence of alcohol, and the licensee refuses a police officer's request to submit to chemical testing.

2. The August 2006 version of the DL–26 Form states:

   1. Please be advised that you are under arrest for driving under the influence of alcohol or controlled substance in violation of Section 3802 of the Vehicle Code.
   2. I am requesting that you submit to a chemical test of _____ (blood, breath or urine. Officer chooses the chemical test).
   3. It is my duty as a police officer to inform you that if you refuse to submit to the chemical test, your operating privileges will be suspended for at least 12 months, and up to 18 months, if you have prior refusals or have been previously sentenced for driving under the influence. In addition, if you refuse to submit to the chemical test, and you are convicted of or plead to violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, because of your refusal, you will be subject to the more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code, the same as if you would be convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.
   4. It is also my duty as a police officer to inform you that you have no right to speak with an attorney or anyone else before deciding whether to submit to testing and any request to speak with an attorney or anyone else after being provided these warnings or remaining silent when asked to submit to chemical testing will constitute a refusal, resulting in the suspension of your operating privileges and other enhanced criminal sanctions if you are convicted of violating Section 3802(a) of the Vehicle Code.

Form.[3] Quigley appealed to this Court.[4]

Quigley argues on appeal that the trial court erred as a matter of law by concluding that warnings contained in the DL–26 Form were not ambiguous and confusing to Quigley. Based upon the following analysis, we disagree.

■■■ The operation of a motor vehicle in Pennsylvania "is a privilege subject to such conditions as the legislature may see fit to impose...." *Dep't of Transp., Bureau of Driver Licensing v. Hoover,* 147 Pa.Cmwlth. 70, 606 A.2d 1264, 1266 (1992) (Palladino, J., dissenting). Among the conditions imposed upon that privilege is the implied consent to submit to chemical testing where there is reasonable cause to believe a licensee is driving under the influence of alcohol and/or a controlled substance. *Hoover.* Section 1547 of the Vehicle Code is a clear statement of the legislative purpose to keep drunk drivers off the roads. *Id.* Section 1547(b) of the Vehicle Code states:

(1) If any person placed under arrest for a violation of section 3802 [(relating to DUI)] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privileges of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply:

(A) The person's operating privileges have previously been suspended under this subsection.

(B) The person has, prior to the refusal under this paragraph, been sentenced for:

(I) an offense under section 3802;

(II) an offense under former section 3731 [(related to serious traffic offenses)];

(III) an offense equivalent to an offense under subclause (I) or (II); or

(IV) a combination of offenses set forth in this clause.

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

■■■ It is well-settled that, in order to sustain a one-year license suspension under Section 1547 of the Vehicle Code, PennDOT must show that the driver (1) was placed under arrest for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and, (4) was specifically warned that refusal would result in the suspension of his/her driver's license. *Martinovic v. Dep't of Transp., Bureau of Driver Licensing,* 881 A.2d 30 (Pa.Cmwlth.2005). Once PennDOT's "burden has been met, the motorist must prove that his refusal was not knowing or conscious or that he was physically unable to take the test." *Dep't of Transp., Bureau of Driver Licensing v.*

---

**3.** The trial court filed its opinion on February 6, 2008.

**4.** Our review is limited to determining whether the trial court committed an error of law or abused its discretion, and whether neces-

sary findings of fact were supported by substantial evidence. *Reinhart v. Dep't of Transp., Bureau of Driver Licensing,* 946 A.2d 167 (Pa.Cmwlth.2008).

*Boucher*, 547 Pa. 440, 446, 691 A.2d 450, 453 (1997).

There is no question that Quigley: was placed under arrest for driving under the influence of alcohol, was asked to submit to a chemical test, refused to do so, was read all four warnings on the DL–26 Form verbatim by Officer Arnold, and read the form herself. September 27, 2007 Notes of Testimony (N.T.) at 13–16, 18–19, 47, 60–61, 76, 78, 84; Reproduced Record (R.R.) at 24a–27a, 29a–30a, 58a, 71a–72a, 87a, 89a, 95a, 120a. In order for Quigley to prevail on the appeal of her license suspension, Quigley must, therefore, prove that her refusal to submit to chemical testing was not knowing or conscious.[5]

■■■ Because the "knowing and conscious" standard is not explicitly found in Section 1547, it "must be strictly construed as it creates exceptions to the clear language and policy of the implied consent law." *Hoover* at 1269. There is no requirement in Vehicle Code Section 1547(b)(2)(i) that the implied consent warning issued by an officer contain any specific wording. It must merely "inform" a licensee that his/her "operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S. § 1547(b)(2)(i). The Pennsylvania Supreme Court affirmed this Court's holding that a warning is legally sufficient if it informs the licensee that refusing a request for chemical testing means that he/she "will be in violation of the law and will be penalized for that violation." *Dep't of Transp., Bureau of Driver Licensing v. Weaver*, 590 Pa. 188, 191, 912 A.2d 259, 261 (2006),

citing *Weaver v. Dep't of Transp., Bureau of Driver Licensing*, 873 A.2d 1, 3 (Pa. Cmwlth.2005).[6] The DL–26 Form did just that.

■■■ Warning 3 on the DL–26 Form states:

[i]t is my duty as a police officer to inform you that if you refuse to submit to the chemical test, your operating privileges will be suspended for at least 12 months, and up to 18 months, if you have prior refusals or have been previously sentenced for driving under the influence. In addition, if you refuse to submit to the chemical test, and you are convicted of or plead to violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, because of your refusal, you will be subject to the more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code, the same as if you would be convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

R.R. at 120a, 125a. We hold that this warning sufficiently apprises the driver hearing and/or reading it that, if he/she refuses to submit to the chemical test, his/her operating privileges "will be suspended," and that other penalties may be imposed. That a particular motorist hearing the warning may question its interpretation is not a sufficient basis upon which to state that the refusal was not knowing

---

5. There is no allegation in the record or on appeal that Quigley was physically unable to take the test.

6. We acknowledge that *Weaver* examined the sufficiency of an earlier version of the implied consent warning under Section 1547(b)(2)(ii), as opposed to Section 1547(b)(2)(i); however,

the variation in subsections and versions does not change the ultimate conclusion that an implied consent warning in Pennsylvania must notify a licensee he/she will be in violation of the law and will be penalized for that violation if he/she refuses to submit to chemical testing.

and conscious. In fact, the Pennsylvania Supreme Court has held that "[a] motorist's subjective beliefs are an insufficient justification for refusing to comply with the mandates of the Implied Consent Law." *Dep't of Transp., Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 249, 684 A.2d 539, 543 (1996) (driver did not believe the officer's warning). Further, we find it is unreasonable for a driver, whose operating privileges were granted subject to his/her implied consent to submit to chemical testing where there is reasonable cause to believe a licensee is driving under the influence of alcohol, to believe that there would not be a penalty for failure to submit to that testing.

Furthermore, in this case, Quigley was not confused about the language of the warnings. N.T. 65–66; R.R. at 76a–77a. She never indicated that she had any questions about it, or that she interpreted the language of DL–26 Form to mean that her operating privileges would only be suspended if she had previous refusals or convictions for DUI. N.T. at 19–20, 65–66, 78; R.R. at 30a–31a, 76a–77a, 89a. In addition, the only reason she gives for not wanting to submit to the breathalyzer is that she wanted to speak with her husband first, which she had been told she had no right to do. N.T. at 85–91; R.R. at 96a–102a. Therefore, Quigley did not meet her burden of showing that her refusal to submit to the chemical test was not knowing and conscious.[7]

We find that the DL–26 Form is sufficient as a matter of law to meet the warning requirement under Vehicle Code Section 1547(b), and it appropriately apprised Quigley that her license would be suspended if she refused chemical testing on February 16, 2007.

Based upon the foregoing, we hold that the trial court did not err, and its February 7, 2008 order must be affirmed.

### ORDER

AND NOW, this 4th day of February, 2009, November 16, 2007 order of the Court of Common Pleas of Allegheny County is AFFIRMED.

### DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. Joan Quigley understood the DL–26 warning as it was intended by PennDOT. Nevertheless, I would sustain her appeal. PennDOT's warning did not satisfy the mandate in Section 1547(b) of the Vehicle Code because it was worded ambiguously.

In response to her attorney's questioning, Quigley replied that she understood the DL–26 warning read to her by the arresting officer, which was the same warning read to Darlene Yourick. *See Yourick v. Department of Transportation, Bureau of Driver Licensing,* 965 A.2d 341 (Pa.Cmwlth., 2009).[1] Further, Quigley,

---

**7.** We acknowledge Quigley's claim that the trial court erred in ruling that Warnings 3 and 4 in the DL–26 Form applied to her, in light of the fact that she entered the Accelerated Rehabilitative Disposition (ARD) program as a result of this arrest, and she had no prior refusals, or DUI convictions or sentences. This is another attempt, however, at saying that the form was ambiguous and led to Quigley's confusion. Since we have found that the DL–26 Form is sufficient as a matter of law to meet the warning requirement under Vehicle

Code Section 1547(b), and that it was Quigley's desire to speak to her husband, rather than any confusion about the warnings that led to her refusal, this issue will not be further addressed.

**1.** Darlene Yourick also believed she understood the import of the DL–26 warning. What she understood, however, was not what PennDOT intended her to understand. Nevertheless, as found by the trial court, Your-

unlike Yourick, understood the warning in the way intended by PennDOT, *i.e.*, that a refusal to submit to chemical testing would cause a license suspension of at least 12 months. Nevertheless, Quigley's attorney, having been in the courtroom when Yourick's appeal was heard, challenged the DL–26 warning read to Quigley as not satisfying the mandate of Section 1547 of the Vehicle Code, thereby preserving the issue. Because Quigley, unlike Yourick, had not been misled by the ambiguity in the DL–26 warning, the trial court denied her appeal and upheld PennDOT's 12–month suspension. I would reverse the trial court.

The DL–26 warning is mandated by Section 1547(b)(2) of the Vehicle Code, which states:

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege *will be suspended* upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c)(relating to penalties).

75 Pa.C.S. § 1547(b)(2) (emphasis added). In accordance with this statutory mandate, every motorist stopped on suspicion of driving under the influence of alcohol is given a Section 1547 warning. The word-ing of this warning is prepared by Penn-DOT and placed on its "DL–26 Form," which is then read aloud by the arresting officer to the motorist.

The DL–26 warning read to Quigley stated as follows:

[I]f you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months, and up to 18 months, *if you have prior refusals or have been previously sentenced for driving under the influence.*

Form DL–26, Reproduced Record at 120a (R.R. _____) (emphasis added). Quigley did not have a prior refusal or conviction; however, Quigley did understand that her refusal to undergo chemical testing would lead to a suspension of at least 12 months. The legal question presented in this appeal is whether Quigley's subjective understanding, which happens to be correct, cures any legal problem caused by the ambiguity in PennDOT's DL–26 warning.

The majority holds that the DL–26 warning read to Quigley is satisfactory because it contained the words "will be suspended." The majority assigns no significance to the qualifying phrase, "if you have prior refusals or have been previously sentenced for driving under the influence." Even PennDOT conceded on reargument in *Yourick* that its DL–26 warning is capable of two readings: that intended by PennDOT and that which was understood by Yourick.[2] PennDOT argues, however,

ick's understanding of the warning contained on the DL–26 Form was reasonable.

**2.** In its application for reargument of the *Yourick* decision, PennDOT wrote:

The Bureau acknowledges that, because of the superfluous comma following the words "and up to 18 months," it is possible for this sentence to be understood to have one or the other of two different meanings.

*Yourick*, PennDOT Application for Reargument En Banc at 7, filed August 6, 2008. The same acknowledgement appeared in Penn-DOT's Brief on Reargument at 22, filed September 26, 2008. It is not the "superfluous comma" alone that creates the ambiguity. There is one central declaration in the sentence, *i.e.*, "you will be suspended," and it is modified by two conditional and dependent clauses that begin with the word "if." It is the presence of two dependent clauses in one sentence that creates the ambiguity, and removing the "superfluous comma" does not eliminate the ambiguity.

that so long as a warning is capable of being read the correct way, then it is sufficient as a matter of law.[3]

A warning that is worded with an ambiguity is not satisfactory regardless of its impact upon the recipient. It is by an objective, not a subjective, standard that statutory compliance must be measured. Our Supreme Court has explained that a "motorist's subjective beliefs are an insufficient justification for refusing" to undergo chemical testing. *Department of Transportation, Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 249, 684 A.2d 539, 543 (1996). The obverse is also true. A motorist's subjective beliefs do not relieve the arresting officer of the need to give the warning mandated in Section 1547(b). If this were so, the arresting officer would be excused from giving the warning to a motorist who happens to work for the Bureau of Driver Licensing or one employed as a police officer.

In *Peppelman v. Commonwealth,* 44 Pa. Cmwlth. 262, 403 A.2d 1041 (1979) this Court held that using the word "could" instead of "will" in the Section 1547(b) warning did not comply with the statute and, therefore, set aside the license suspension. The motorist refused the test not because of the wording of the warning, but under advice of counsel. This fact was held to be of no moment. Judge Rogers explained that "a strict approach" is appropriate

> with respect to language imposing the duty upon the police officer to inform the motorist that his license will be suspended or revoked if he refuses to take the test. The Legislature clearly added the requirement of Section 1547(b)(2) to provide something to which it believed the motorist was in fairness entitled—prior warning of the consequence of refusing the test. The language of Section 1547(b)(2) is clear and unambiguous and the duty it imposes on the police officer is not difficult to perform. For us to hold, as we are asked [by PennDOT], that an *inaccurate performance of this duty is to be overlooked if the motorist has not relied on the warning would simply invite a trial of the issue of reliance wherever the warning was defective.* We refuse to accept exculpatory issues at the behest of the motorists who failed to do what the statute required; and we believe we should not do so at the behest of erring public authority.

*Id.* at 1043 (emphasis added). In short, Quigley's subjective beliefs about the consequences of her refusal to undergo chemical testing were of no moment in determining whether the warning read to her satisfied the mandate of Section 1547(b).

The "strict approach" this Court announced in *Peppelman* is consistent with the Statutory Construction Act of 1972, which requires that the "penal provisions" of a statute "shall be strictly construed." 1 Pa.C.S. § 1928(b)(1). A "penal provision" is one that imposes sanctions, whether civil or criminal. *Leach v. State Real Estate Commission,* 25 Pa.Cmwlth. 474, 360 A.2d 269 (1976) (holding that a real estate licensing statute was subject to strict construction because it provided a penalty in the nature of a license suspension for violating the statute). This strict construction principle is also applied to the procedural requirements of a penal provi-

---

**3.** PennDOT asserts that the DL–26 warning it prepared is not "so ambiguous" that it fails to satisfy the mandate in 75 Pa.C.S. § 1547(b)(2). PennDOT offers no guidance on how to distinguish a "so ambiguous" notice, which does not satisfy the statutory mandate, from a merely "ambiguous" notice, which presumably does satisfy the mandate. PennDOT offers no authority for its position that an ambiguous notice can ever satisfy a statutory mandate.

sion. *In re Schwab's Adoption,* 355 Pa. 534, 50 A.2d 504 (1947) (holding that a statutory remedy or procedure must be strictly pursued).[4] The warning required under 75 Pa.C.S. § 1547(b) is such a procedural requirement. It is inconsistent with a strict construction of Section 1547(b) to allow PennDOT to satisfy the statutory mandate with a warning capable of being read two ways.[5]

This Court has consistently construed the warning requirement in Section 1547(b) strictly. In *Everhart v. Commonwealth,* 54 Pa.Cmwlth. 22, 420 A.2d 13, 15 (1980), this Court held that a DL–26 warning that advised a motorist that his license "could be suspended" for refusing a test was not sufficient to satisfy Section 1547(b). We held that the words "will be suspended," which are those used in Section 1547(b), must be recited by the arresting officer. Likewise, in *Yoon v. Department of Transportation, Bureau of Driver Licensing,* 718 A.2d 386 (Pa.Cmwlth.1998), this Court held that the warning requirement in Section 1547(b) was not satisfied by having the motorist read the DL–26 warning silently to himself. Rather, construing the statute strictly, we held that the arresting officer must also read the DL–26 warning aloud to the motorist. As in *Peppelman,* this Court refused to sustain PennDOT's suspension in *Everhart* and *Yoon* because the warning given to the

motorist did not satisfy Section 1547(b) of the Vehicle Code.

Strict compliance with statutory notice requirements is the rule in other situations. In *Nationwide Insurance Company v. Pennsylvania Insurance Department,* 779 A.2d 14 (Pa.Cmwlth.2001), this Court set aside a policy cancellation because the insurer's pre-cancellation notice was not given to the policyholder within the deadline required by statute.[6] In *Valianatos v. Zoning Hearing Board of Richmond Township,* 766 A.2d 903 (Pa.Cmwlth. 2001), this Court voided a zoning ordinance *ab initio* because the township's published notice of the ordinance enactment was unclear and ambiguous. In *In re: Return of the McKean County Tax Claim Bureau,* 677 A.2d 1325 (Pa.Cmwlth.1996), this Court set aside a tax sale because the tax claim bureau's notice to the taxpayers on how to eliminate their tax delinquency was ambiguous. Further, the fact that a property owner has actual notice of an impending tax sale does not relieve the tax claim bureau of the need to give each of the three types of notices required by statute; if it does not do so, the sale is invalidated. *Chester County Tax Claim Bureau v. Griffith,* 113 Pa.Cmwlth. 105, 536 A.2d 503, 504 (1988).

Statutory notice requirements are strictly enforced, and there is no reason to hold

4. The license suspension provisions in the Vehicle Code are penal provisions subject to a strict construction. 1 Pa.C.S. § 1928(b)(1). This includes the procedural requirements that must be followed where PennDOT seeks to suspend the license of a motorist who has refused to submit to chemical testing. This procedure requires PennDOT to prove, *inter alia,* that the arresting officer gave the warning mandated by Section 1547(b)(2) of the Vehicle Code to the motorist.

5. To eliminate the ambiguity from the notice, it is necessary to do so in a way that favors the licensee and not the drafter of the notice,

PennDOT. Accordingly, the notice means that if the licensee has never been previously arrested for DUI or has never before been requested to take a chemical test, then the licensee may refuse the test without a license suspension.

6. Indeed, the New York Supreme Court held that a notice of cancellation printed in the wrong size typeface did not satisfy the statutory notice requirement. *Sanders–Davis v. Government Employees Insurance Company,* 117 Misc.2d 768, 459 N.Y.S.2d 219 (N.Y.Sup.Ct. 1983).

PennDOT to a lesser standard than that imposed upon townships, tax claim bureaus and insurance companies. Indeed, in the past, this Court has not done so. To the contrary, we have held PennDOT to strict compliance with the Section 1547 warning requirement, as *Peppelman, Everhart* and *Yoon* establish. The majority's decision otherwise is inexplicable.[7]

It is the duty of the police officer to provide a motorist arrested on suspicion of driving under the influence with a simple warning: your "operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S. § 1547(b)(2)(i). The statute does not require the officer to

relate much of the other information included in the DL–26 warning read to Quigley.[8] Indeed, PennDOT's prolix, four-part warning, embroidered with extraneous information has the effect of diluting the simple message commanded by the legislature.[9]

The defining issue is whether a warning delivered in a run-on sentence can satisfy Section 1547(b). There is a reason grammarians inveigh against run-on sentences: they create confusion. A warning containing an ambiguity is no warning at all. It matters not that Quigley was not misled by the ambiguity because her subjective beliefs are irrelevant. *Peppelman*, 44 Pa.

7. Any notice or warning given by a government agency of sanctions or penalties that may be imposed upon a citizen must be clear. It has been explained that if "there is any ambiguity in the terms of a notice, rendering its meaning doubtful, the doubt must be resolved against the person giving the notice." 66 C.J.S. *Notice* § 33 (2002) (footnote omitted). The Court of Appeals for the District of Columbia has explained:

> In other areas of administrative law, we have emphasized the importance of eliminating ambiguity, and, where we have found ambiguity, we have construed it against the government agency that drafted the language.

*Matter of D.R.*, 541 A.2d 1260, 1264 (D.C. 1988).

8. The DL–26 warning read to Quigley states:
   1. Please be advised that you are under arrest for driving under the influence of alcohol or controlled substance in violation of Section 3802 of the Vehicle Code.
   2. I am requesting that you submit to a chemical test of Breath (blood, breath or urine. Officer chooses the chemical test).
   3. *It is my duty as a police officer to inform you that if you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months, and up to 18 months, if you have prior refusals or have been previously sentenced for driving under the influence.* In addition, if you refuse to submit to the chemical test, and you are convicted of or plead to violating Section 3802(a)(1) (relating to impaired driving) of

the Vehicle Code, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code, the same as if you would be convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.
   4. It is also my duty as a police officer to inform you that you have no right to speak with an attorney or anyone else before deciding whether to submit to testing and any request to speak with an attorney or anyone else after being provided these warnings or remaining silent when asked to submit to chemical testing will constitute a refusal, resulting in the suspension of your operating privilege and other enhanced criminal sanctions if you are convicted of violating Section 3802(a) of the Vehicle Code.

R.R. 120a (emphasis added). This warning exceeds the statutory requirements. One may argue that there is no harm in being more thorough, but at some point excessive information will render a notice invalid. A DL–26 warning that also advises the motorist of the need for exercise and lowered cholesterol may not be in itself harmful and even a good idea. However, it does not deliver the punch contemplated by the legislature.

9. Whether a notice that exceeds the statutory requirements complies with Section 1547(b) is not before this Court.

Cmwlth. 262, 403 A.2d 1041. Strict compliance with the Section 1547(b) mandated notice is required, and it was not satisfied with the version of the DL–26 warning read to Quigley.

PennDOT did not meet its burden of proving that Quigley was "specifically warned" in accordance with the mandate of Section 1547(b) of the Vehicle Code. *Todd v. Department of Transportation, Bureau of Driver Licensing,* 555 Pa. 193, 197, 723 A.2d 655, 657–658 (1999). To the contrary, the officer's "inaccurate performance" cannot "be overlooked." *Peppelman,* 403 A.2d at 1043. Accordingly, I would reverse the trial court and sustain Quigley's appeal.

Judge McGINLEY and Judge PELLEGRINI join.