IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Price                                :
                                            :
            v.                              :    No. 1873 C.D. 2016
                                            :    Submitted: May 5, 2017
Commonwealth of Pennsylvania,               :
Department of Transportation,               :
Bureau of Driver Licensing,                 :
                        Appellant           :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: September 29, 2017

            The Department of Transportation, Bureau of Driver Licensing
(Department) appeals an order of the Court of Common Pleas of Bucks County
(trial court) sustaining the appeal of Sandra Price (Licensee) from a one-year
suspension of her operating privilege under Section 1547 of the Vehicle Code
(Implied Consent Law), 75 Pa. C.S. §1547.[1]  For the following reasons, we reverse.

            On May 14, 2016, Licensee was arrested for driving under the
influence of alcohol or controlled substance pursuant to Section 3802 of the
Vehicle Code, 75 Pa. C.S. §3802.[2]  On June 17, 2016, the Department notified

_____

[1] Section 1547 of the Vehicle Code is commonly referred to as the Implied Consent Law.  The
Implied Consent Law authorizes suspension of the driving privileges of a licensee for one year
where the licensee is placed under arrest for driving under the influence of alcohol, and the
licensee refuses a police officer's request to submit to chemical testing.

[2] It states in pertinent part:

        An individual may not drive, operate or be in actual physical control of the
        movement of a vehicle after imbibing a sufficient amount of alcohol such that the

**(Footnote continued on the next page . . .)**

Licensee that her operating privilege would be suspended for a period of one year, effective July 22, 2016. The notice explained that the suspension resulted from her refusal to submit to chemical testing following the arrest, in violation of the Implied Consent Law. 75 Pa. C.S. §1547(b).[3] Licensee appealed, and the trial court held a *de novo* hearing on September 21, 2016.

The Department presented the testimony of Solebury Township Police officer Gary Forrester. Forrester testified that on May 14, 2016, he was on patrol when he "observed a black Audi travel southbound on Route 202, [and] make a wide right turn to go north on Street Road." Notes of Testimony, 9/21/2016, at 5 (N.T. __); Reproduced Record at 18a (R.R. ___). Forrester followed the vehicle and observed it "veer off to the right side of the roadway where there is no shoulder; it's just road and grass. The front tire of the vehicle was touching the grass on two separate occasions." *Id.*

---

**(continued . . .)**
   individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa. C.S. §3802(a)(1).

[3] Section 1547(b) states, in relevant part:

   (b)   Suspension for refusal. –

      (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

         (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. §1547(b)(1)(i).

Forrester testified that he stopped the vehicle, which was being driven by Licensee. He asked Licensee for her driver's license, and "it took approximately a minute for her to retrieve it." N.T. 6; R.R. 19a. Licensee stated that "she had a glass of wine about 6:00 pm." *Id.* Forrester conducted three field sobriety tests, all of which Licensee failed. Forrester also administered a preliminary breath test, which registered a blood-alcohol content of 0.203 percent.

Forrester arrested Licensee for driving under the influence. He asked her to submit to a blood test, and she agreed. Forrester took Licensee to Doylestown Hospital for testing. Once there, Licensee refused to submit to a blood test. Forrester testified that he "read the DL-26 form [to Licensee], word for word in front of the nurse and security guard. After reading the DL-26, [he] again asked [Licensee] if she was willing to submit to a blood test, and at that time she said, no." N.T. 8; R.R. 21a.

The Form DL-26 Forrester read to Licensee contained the following language:

> If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

3

R.R. 37a. On cross-examination, Forrester acknowledged that the current version of Form DL-26 no longer warns a licensee of criminal penalties for refusing to consent to chemical testing.

Licensee presented no evidence but argued that the imposition of a criminal penalty for refusal to submit to a chemical test was held unconstitutional by the U.S. Supreme Court in *Birchfield v. North Dakota*, ___U.S. ___, 136 S. Ct. 2160 (2016). Therefore, Licensee argued, the warning contained in the Form DL-26 Forrester used was "inaccurate," and her refusal, which was made based upon the "inaccurate" warning, should be stricken. N.T. 13; R.R. 26a.

The trial court sustained Licensee's appeal. The Department appealed to this Court. In its opinion filed pursuant to Pa. R.A.P. 1925(a), the trial court concluded that, upon further consideration of the record and the case law, it had erred in sustaining Licensee's appeal based on *Birchfield*, which applies only to criminal proceedings. The trial court urges this Court to reverse its order and remand the matter for further proceedings.

On appeal,[4] the Department contends that the trial court erred in sustaining Licensee's appeal because *Birchfield* is inapplicable to a license suspension proceeding, which is a civil, not criminal, proceeding. Licensee was warned that her operating privilege would be suspended but nevertheless refused to submit to a blood test; therefore, the suspension is proper under 75 Pa. C.S. §1547. Licensee counters that Sections 3803 and 3804 of the Vehicle Code, 75 Pa. C.S.

---

[4] Our review is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or abused its discretion. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1205 (Pa. 1999).

4

§§3803, 3804, are unconstitutional insofar as they impose criminal penalties upon individuals who refuse to submit to blood tests. In advancing that argument, Licensee relies on *Birchfield* and the Superior Court's decision in *Commonwealth v. Giron*, 155 A.3d 635 (Pa. Super. 2017). Thus, Licensee asserts that the Form DL-26 used in this case contained "[w]rong, incorrect, and unconstitutional information," which "invalidate[d] the warning." Licensee Brief at 8-9. Licensee argues that she did not give "an informed refusal that would suspend a license." *Id.* at 9.

We first examine Section 1547 of the Vehicle Code, which provides in pertinent part:

> (a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
> > (1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance)….
>
> * * *
>
> (b) Suspension for refusal.—
>
> > (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person as follows:

5

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

\* \* \*

(2) It shall be the duty of the police officer to inform the person that:

> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

> (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa. C.S. § 1547(a),(b). It is well established that in order to sustain a one-year license suspension under Section 1547 of the Vehicle Code, the Department must show that the licensee (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that refusal would result in the suspension of his driver's license. *Quigley v. Department of Transportation, Bureau of Driver Licensing*, 965 A.2d 349, 352 (Pa. Cmwlth. 2009). Once the Department satisfies its burden, the licensee must prove that his refusal "was not knowing or conscious or that he was physically unable to take the test." *Id.* (quoting *Department of Transportation, Bureau of Driver Licensing v. Boucher*, 691 A.2d 450, 453 (Pa. 1997)).

Here, it is undisputed that Licensee was arrested for driving under the influence of alcohol; was asked to submit to a blood test; refused to do so; and was

read the warnings on the Form DL-26 by Officer Forrester, which included a warning that refusal would result in the suspension of her driver's license. Nevertheless, Licensee argues that she did not give an "informed" refusal because the Form DL-26 also warned of criminal penalties for refusal, which penalties *Birchfield* held to be unconstitutional. Licensee Brief at 9. We disagree.

In *Birchfield*, the U.S. Supreme Court held that the Fourth Amendment's guarantee against unreasonable searches and seizures prohibits a warrantless blood test incident to an arrest for drunk driving. Relevant here, the Supreme Court also held that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2186. In short, *Birchfield* holds that consent to a blood test is not voluntary where the driver is advised that refusing the blood test will result in a criminal charge.

In the instant case, the Form DL-26 warned Licensee that "if you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months." R.R. 37a. The Form DL-26 further warned Licensee, in pertinent part:

> In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol….

*Id.* After *Birchfield* was decided, our Superior Court held that Sections 3803 and 3804 of the Vehicle Code impose criminal penalties upon individuals who refuse

7

to submit to blood testing. *Giron*, 155 A.3d at 639 (citing *Commonwealth v. Evans*, 153 A.3d 323, 331 (Pa. Super. 2016)). Thus, a driver cannot legally consent to a warrantless blood test if she is advised that her refusal may result in the enhancement of criminal penalties. *Evans*, 153 A.3d at 331. This case law is inapposite, however, because the instant matter is not a criminal case. Here, Licensee was properly warned of the *civil* consequences of a refusal, *i.e.*, suspension of her operating privilege, and she refused to consent. Any enhanced criminal penalties resulting from her refusal are irrelevant to her license suspension.[5] Furthermore, Licensee never consented to a blood test and in fact no blood sample was obtained. For all of these reasons, *Birchfield* is inapposite.

The Department having satisfied its burden under Section 1547 of the Vehicle Code, Licensee had to prove that her refusal was "not knowing or conscious" or that she was "physically unable to take the test." *Quigley*, 965 A.2d at 352. Licensee did not advance such an argument before the trial court or on appeal. She argues only that she did not have "[a]n informed understanding" of the

---

[5] A license suspension is a civil, not criminal, penalty. *Nornhold v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 59, 63 (Pa. Cmwlth. 2005). The *Birchfield* court expressly approved of implied consent laws that impose civil penalties for refusal to submit to a blood test. The Supreme Court stated:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

*Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2185 (internal citations omitted). *See also Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10, 21 (Pa. Cmwlth. 2017), *appeal denied*, ___A.3d ___ (Pa., 210 MAL 2017, filed August 22, 2017) (noting that "although *Birchfield* may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed, such is not the case before us in this civil license suspension appeal under the Implied Consent Law.").

consequences of her refusal. Licensee Brief at 9. Accordingly, her license suspension must be reinstated.

For all these reasons, we reverse the trial court's order and reinstate Licensee's one-year suspension of her operating privilege.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Price                                    :
                                                :
            v.                                  :    No. 1873 C.D. 2016
                                                :
Commonwealth of Pennsylvania,                   :
Department of Transportation,                   :
Bureau of Driver Licensing,                     :
                  Appellant                     :


# **O R D E R**

AND NOW, this 29th day of September, 2017, it is hereby ORDERED that the order of the Court of Common Pleas of Bucks County, dated October 28, 2016, in the above-captioned matter is REVERSED and the one-year suspension of Sandra Price's vehicle operating privilege is REINSTATED.


                              _____
                              MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Price                          :
                                      :
         v.                           :    No. 1873 C.D. 2016
                                      :
Commonwealth of Pennsylvania,         :    Submitted: May 5, 2017
Department of Transportation,         :
Bureau of Driver Licensing,           :
                 Appellant            :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge


**_OPINION NOT REPORTED_**

CONCURRING OPINION
BY JUDGE McCULLOUGH                         FILED: September 29, 2017


If the assertion of a constitutional right results in adverse consequences so detrimental that it impedes its invocation, the right is essentially no right at all and exists merely by way of illusion.

While a license suspension imposed pursuant to a criminal conviction for driving under the influence, *see, e.g.,* section 3803(e) of the Vehicle Code, 75 Pa.C.S. §3803(e), remains viable and enforceable, for the reasons set forth in my concurring opinion in *Gray v. Department of Transportation, Bureau of Driver Licensing*, (Pa. Cmwlth., Nos. 1759 and 1760 C.D. 2016, filed June 9, 2017) (unreported), I believe that pursuant to *Birchfield v. North Dakota*, ___ U.S. ___, 136 S.Ct. 2160 (2016); *Commonwealth v. Giron*, 155 A.3d 635 (Pa. Super. 2017); and *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016), a license

suspension under Pennsylvania's Implied Consent Law,[1] based solely on an individual's refusal to submit to a blood test, is an unconstitutional civil penalty inflicted upon an individual for exercising the Fourth Amendment right to refuse consent to a warrantless search.[2]

As elucidated in the concurring opinion, the syllogism is straightforward: (1) Pennsylvania's Implied Consent Law imposes both criminal penalties *and* civil penalties for a refusal to submit to a blood test; (2) the decisions in *Birchfield*, *Evans*, and *Giron* collectively establish that an individual has the constitutional right to refuse a blood test in the face of the criminal penalties;[3] (3) the Pennsylvania Constitution provides that there can be no sanction or penalty imposed upon an individual for exercising a constitutional right; and (4) therefore, an individual cannot be subjected to a civil penalty in the form of a mandatory license suspension of no less than one year for refusing to submit to a blood test.

To me, it is patently incongruous for our Superior Court in *Giron* to declare the Implied Consent Law a legal nullity for imposing criminal penalties on constitutional conduct, i.e., refusing consent, and for this Court in *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017), to permit the Implied Consent Law to inflict severe civil penalties

---

[1] Section 1547 of Vehicle Code, 75 Pa.C.S. §1547.

[2] *Accord State v. Brar*, 898 N.W.2d 499, 514 (Wisc. 2017) (Kelly, J., concurring) ("The Penalty Component punishes a driver by revoking his operating privileges if he refuses an officer's request for a blood sample. But that smacks of punishing someone for the exercise of his constitutional right to be free of unreasonable searches, upon which we generally frown.") (citations omitted).

[3] *See Commonwealth v. Myers*, 164 A.3d 1162, 1177 (Pa. 2017) (plurality) ("The opportunity to make a knowing and conscious choice – to decide whether to provide actual, voluntary consent or to exercise the right of refusal – . . . is a constitutional necessity.").

on the same constitutional conduct. Quite simply, the constitutional right to refuse consent to a warrantless blood test cannot be reduced to a "shell game" where the right exists in only certain places and courts guess at its location. This is especially true considering that the Implied Consent Law simultaneously threatens an individual with both criminal and civil penalties for refusing to take a blood test. These penalties are legally inseparable and operate conjunctively to have the practical effect of coercing an individual into sacrificing a guaranteed civil liberty and succumbing to a state-compelled invasive procedure that dispenses with the warrant requirement. *See State v. Pettijohn*, 899 N.W.2d 1, 33-38 (Iowa 2017).

In *Boseman* this Court limited the constitutional right to refuse consent on the basis that a license suspension is civil rather than criminal in nature. However, if this distinction is enough to eviscerate a constitutional right, then the Commonwealth could potentially curtail the free exercise of constitutional rights by simply attaching civil penalties to conduct protected by the constitution. *See also State v. Yong Shik Won*, 372 P.3d 1065, 1086-87 (Haw. 2015).[4] Nonetheless, our precedent now holds that the Implied Consent Law can sanction the suspension of an individual's driver's license because the individual invokes the 4th Amendment right to refuse consent to a warrantless search. Unfortunately, "[b]ecause the three-judge panel deciding this case is bound by *Boseman*, I am constrained to concur in the result reached by the Majority. However, pursuant to the mandates of *Birchfield*, [I believe that] any license suspension imposed by the

---

[4] For example, under the reasoning in *Boseman*, the General Assembly could legitimately pass a law that permits the administrative revocation of a firearm license when an individual possesses a firearm in accordance with the Second Amendment; a law that allows a zoning hearing board to rescind a building permit when a contractor engages in First Amendment speech criticizing the board's permitting process; or a law that authorizes an administrative commission to terminate a public employee for invoking the 5th Amendment right to remain silent during an internal investigation.

Department that is predicated solely on a licensee's refusal to submit to a blood test is unconstitutional." *Gray*, (McCullough, J., concurring), slip op. at 10.

Hence, I concur in the result reached by the majority.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sandra Price | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | No. 1873 C.D. 2016 |
| Appellant | : | Submitted: May 5, 2017 |


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                    FILED: September 29, 2017


When Sandra Price (Licensee) advised the arresting officer that she would not submit to a blood test, she was read the information contained on the prior version of the Department's DL-26 form. This information included a warning that Licensee's failure to submit to the blood test could result in certain criminal penalties. The current form of the DL-26 eliminates this warning, undoubtedly because of the decision in *Birchfield v. North Dakota,* ___U.S.___, 136 S.Ct. 2160 (2016), which held that imposition of criminal penalties for refusing a blood test violated the Constitution.

While *Birchfield* is not directly applicable here, it does stand for a principle which the former DL-26 does not reflect. And while *Birchfield* allows implementation of civil penalties for refusal to submit to a blood test in cases such

as this, it does not give states permission to misinform a licensee as to the consequences of a refusal.

Since the present Licensee was so misinformed, suspension of her operating privilege was unconstitutional. As I disagree with the Majority, I dissent.


_____
JOSEPH M. COSGROVE, Judge