IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lauren Velkoff     :
           :
   v.       : No. 23 C.D. 2023
           :
Commonwealth of Pennsylvania, : Submitted: December 4, 2023
Department of Transportation,  :
Bureau of Driver Licensing,   :
     Appellant  :

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE LORI A. DUMAS, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH      FILED: January 5, 2024

   The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDOT) appeals from the December 8, 2022 order of the Court of Common Pleas of Lycoming County (trial court), which sustained the statutory appeal of Appellee Lauren Velkoff (Licensee) from an 18-month suspension of her operating privileges. PennDOT imposed the suspension pursuant to Section 1547(b)(1)(ii) of the Vehicle Code,[1] commonly known as the Implied Consent Law, due to Licensee's refusal to submit to chemical testing after her arrest for driving under the influence of alcohol or controlled substance (DUI). Upon review, we reverse the trial court and reinstate Licensee's suspension.

## I. FACTS AND PROCEDURAL HISTORY

   On August 17, 2022, PennDOT sent Licensee an Official Notice of the suspension of her operating privileges effective September 28, 2022. (Reproduced Record (R.R.) at 5a-7a.) Licensee filed a statutory appeal to the trial court, which held

_____

[1] 75 Pa. C.S. § 1547(b)(1)(ii).

a *de novo* hearing on December 8, 2022.  The evidence presented at the *de novo* hearing can be summarized as follows.

On May 28, 2022, Detective Robert Wiggen of the Dauphin County Criminal Investigation Division (CID) observed a white Jeep driving erratically on U.S. Route 322.  The jeep was weaving in and out of its lane and nearly struck a guard rail. (R.R. at 21a.)  Based on Detective Wiggen's report, Trooper Christopher Fritz of the Pennsylvania State Police (PSP) conducted a traffic stop of the vehicle, which was being driven by Licensee.  Trooper Fritz placed Licensee under arrest and transported her to the PSP barracks.  *Id.* at 22a.[2]

Trooper Fritz testified that, after he arrived with Licensee at the barracks, he obtained a DL-26B Form (Form) and read the written warnings on the Form, verbatim, to her.  (R.R. at 23a, 54a.)[3]  He also testified that he handed the Form to

---

[2] Counsel for Licensee stipulated before the trial court that Trooper Fritz had reasonable grounds to arrest Licensee for suspected DUI.  (R.R. at 22a.)

[3] Although Licensee contested in the trial court whether the warnings in the DL-26B Form were provided to her word-for-word, the trial court nevertheless found that Licensee was adequately informed of the consequences of refusing chemical testing.  Licensee has not challenged that finding on appeal. (R.R. at 37a; Licensee Br. at 9-10.)  The Form advised Licensee of the following:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
2. I am requesting that you submit to a chemical test of blood.
3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months.  If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months.  If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.
4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing.  If you request to speak with an attorney or anyone else after being provided these warnings or

**(Footnote continued on next page…)**

Licensee so that she could read the warnings herself. *Id.* at 23a. Trooper Fritz then asked Licensee to sign the Form, which she refused to do because she believed she was "implicating" herself. *Id.* at 24a. Trooper Fritz testified that, during his exchange with Licensee, she asked questions regarding the differences between Pennsylvania and Delaware law.[4] *Id.* at 26a. After reading the warnings and giving Licensee the Form to read, Trooper Fritz requested that Licensee submit to a blood test. Trooper Fritz testified that Licensee refused the test, after which he applied for a search warrant. *Id.* at 24a-26a. According to Trooper Fritz, it took approximately 45 minutes to obtain the warrant. *Id.* at 27a. Trooper Fritz advised Licensee that she could submit to the blood test pursuant to the search warrant or she would go to jail. *Id.* at 26a. Trooper Fritz also advised Licensee that the troopers could physically restrain her to the extent necessary to obtain a blood sample. *Id.* at 27a.

Licensee testified on her own behalf. She stated that, when she arrived at the barracks, she was confused about the differences between Delaware and Pennsylvania law and was "asking a lot of questions [regarding] what is [going] to happen as far as the consequences of me driving under the influence." *Id.* at 29a. She also testified that she felt "attacked" because Trooper Fritz and the other troopers present in the barracks were dismissive of her questions. *Id.* Licensee denied that Trooper Fritz read the Form to her verbatim and that she was asked to sign the Form to indicate that she was refusing chemical testing. *Id.* at 29a, 32a. She acknowledged

___

you remain silent when asked to submit to a blood test, you will have refused the test.

(R.R. at 54a.) The Form includes a signature line for licensees to acknowledge that they have been advised of the written warnings in the Form. *Id.* Trooper Fritz testified that it was his standard practice to read the Form to licensees and then give it to them to read for themselves. *Id.* at 25a. After he believed Licensee had refused testing, Trooper Fritz acknowledged the refusal on the Form. *Id.* at 54a.

[4] Licensee is a Delaware resident. (R.R. at 28a.)

3

that he gave it to her to read, but denied knowing that it was a "straight-up refusal form." *Id.* at 29a.[5] She also indicated that the writing was small, that she was in a dark room, and that she was shaking during the process. *Id.* She nevertheless acknowledged refusing to sign the Form, after which Trooper Fritz applied for the search warrant. *Id.* After the warrant arrived at the barracks, Licensee testified that she read the warrant and, "at that point, [she] was basically in compliance with giving blood because that was a little more clear to [her] that they had to take it." *Id.* at 30a. Licensee explained that she "was just wanting to be all informed before [she] started signing paperwork that [she] was unclear on." *Id.* at 31a. She also testified that she was frightened during the process because she had just come out of an abusive relationship. *Id.* at 32a.

After the close of testimony and argument, the trial court found as follows regarding whether Licensee had refused chemical testing:

> I[ am] absolutely convinced that [Licensee] was properly placed under arrest. I [am] absolutely convinced that she was advised of the fact that if she refused her license would be suspended. I [am] absolutely convinced of that. I[ am] absolutely convinced that she was advised that if she refused to give blood pursuant to the warrant that it could be taken from her forcibly.

> But there[ is] a gap in the middle that, unfortunately, I can[not] figure out; and that is, it[ is] clear she was there for a[ ]while, at least 45 minutes, probably longer, while they went and got the search warrant.

> But it[ is] very difficult for me to construct exactly what happened in the middle; that is, did she say ["]I[ am] not taking your test[;] if you want to get a search warrant, go

---

[5] Both Licensee and her counsel characterized the Form as a "refusal" form that a licensee signs to indicate his or her refusal of chemical testing. *See* R.R. at 29a, 32a, 33a-34a. But that is not the purpose of the Form. Licensees sign the Form to indicate that they have been advised of the warnings contained in it. Then, if a licensee refuses the testing, the *officer* signs to acknowledge the refusal. (R.R. at 54a.)

right ahead["?] Did she say that? I did[ not] hear that evidence.

But it's pretty clear that once she was advised[,] ["]we[ are] [going to] get your blood and we[ will] do it by force if we have to,["] she then said [she would] consent to the blood test; and, in fact, they got blood.

. . . .

As to whether she refused or did[ not] refuse before the search warrant phenomenon, I[ am] absolutely not convinced one way or the other. And the evidence in my view is dead even on those two. And whoever has the burden of proof, I think it[ is] [PennDOT], I[ am] not convinced that she refused before she gave the blood. And so I[ am] going to grant the appeal.

(R.R. at 37a-38a.)[6] The trial court accordingly sustained Licensee's appeal. PennDOT now appeals to this Court.

## II. ISSUES

PennDOT raises a single issue for our review, namely, whether the trial court erred in concluding that PennDOT did not carry its burden to establish that Licensee refused to submit to chemical testing.[7]

---

[6] The trial court further explained in its Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a) Opinion (Trial Ct. Op.) that PennDOT did not establish that Licensee refused chemical testing because Licensee testified that she was confused about her options and because Licensee ultimately complied with the testing after Trooper Fritz obtained the search warrant. (Trial Ct. Op. at 1.) The trial court further noted that Licensee testified that she did not refuse, but rather cooperated, and that PennDOT "made absolutely no effort to challenge or rebut her testimony that she did not refuse," other than Trooper Fritz's obtaining the search warrant. *Id.* The trial court concluded that, "in the absence of any corroborating testimony by [PennDOT], and because [Licensee] [ ] was a credible witness, the Court could not conclude by a preponderance of the evidence that [Licensee] knowingly refused to submit to a blood test prior to the search warrant." *Id.* at 2.

[7] PennDOT actually addresses two issues in its brief, the first of which involves whether Trooper Fritz adequately informed Licensee of the consequences of a refusal. However, the trial court found that Licensee was advised of the consequences of a refusal, and she has not challenged **(Footnote continued on next page…)**

5

### III.   DISCUSSION[8]

Section 1547(a), (b) of the Vehicle Code provides, in pertinent part, as follows:

> **(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection . . . 3802[9] (relating to driving under influence of alcohol or controlled substance) . . . .

> **(b) Civil penalties for refusal.--**

> (1) If any person placed under arrest for a violation of [S]ection 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [PennDOT] shall suspend the operating privilege of the person as follows:

> . . . .

> (ii) For a period of 18 months if any of the following apply:

> . . . .

> (B) The person has, prior to the refusal under this paragraph, been sentenced for:

> (I) an offense under [S]ection 3802[.]

---

that finding on appeal.  Thus, we need not address this issue, and we assume throughout our analysis that Licensee received adequate warnings from Trooper Fritz.

[8] In license suspension appeals, our review is limited to determining whether the trial court's decision is supported by substantial evidence, whether the trial court committed an error of law, or whether the trial court manifestly abused its discretion.  *Pappas v. Department of Transportation, Bureau of Driver Licensing*, 669 A.2d 504, 507 n.4 (Pa. Cmwlth. 1996).

[9] 75 Pa. C.S. § 3802.

6

75 Pa. C.S. § 1547(a), (b)(1)(ii)(B)(I). To justify the suspension of a licensee's operating privileges under the Implied Consent Law, PennDOT has the burden to prove that the licensee (1) was arrested for DUI by an officer who had reasonable grounds to believe that the licensee was operating a vehicle under the influence of alcohol; (2) was asked to submit to chemical testing; (3) refused the testing; and (4) prior to refusing, was warned by the officer that her operating privileges would be suspended if she refused. *Park v. Department of Transportation*, *Bureau of Driver Licensing*, 178 A.3d 274, 280 (Pa. Cmwlth. 2018). Here, only the third element of PennDOT's *prima facie* case is at issue, namely, whether Licensee in fact refused the requested chemical testing.

Although the trial court, as the finder of fact, is the sole arbiter of the credibility and weight of evidence, *Stancavage v. Department of Transportation*, *Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009), the question of whether a licensee's conduct constitutes a refusal is one of law for the Court. *Lemon v. Department of Transportation, Bureau of Driver Licensing*, 763 A.2d 534, 538 (Pa. Cmwlth. 2000). This legal determination is made based on the facts as found by the trial court. *Nardone v. Department of Transportation*, *Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). Once a police officer provides the implied consent warnings to a motorist, the officer has done all that is legally required to fully advise the motorist of the consequences of a refusal to submit to chemical testing. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 546 (Pa. 1996). The officer must only read the warnings to the motorist and give him or her a meaningful opportunity to comply with the Implied Consent Law. *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 18 (Pa. Cmwlth. 2010). Anything substantially less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal. *Id.* at 19. A refusal need not be

expressed in words; a licensee's conduct may constitute a refusal. *Id.* The determination of whether a licensee refuses to consent to chemical testing "turn[s] on a consideration of whether the [licensee's] overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Nardone*, 130 A.3d at 749. *See also Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (a general unwillingness to submit to chemical testing demonstrated by a licensee's overall conduct).

The reading of a DL-26 Form sufficiently informs a driver, who either hears the warnings or reads them herself, that if she refuses to submit to chemical testing, her operating privileges will be suspended. *Quigley v. Department of Transportation, Bureau of Driver Licensing*, 965 A.2d 349, 353-54 (Pa. Cmwlth. 2009). That a motorist hearing the warnings questions their interpretation will not render any subsequent refusal to be not knowing and conscious, *id.*, and a licensee's subjective beliefs will not justify a refusal to comply with the Implied Consent Law. *Scott*, 684 A.2d at 543. An officer has no duty to answer a licensee's questions. *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 301 (Pa. Cmwlth. 2013). In particular, officers are not obliged to ensure that licensees understand the warnings or the consequences of a refusal. *Park*, 178 A.3d at 281 (citing *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 35 (Pa. Cmwlth. 2005)). Repeated questioning by a licensee following the receipt of warnings may be deemed a refusal. *Keenan v. Department of Transportation, Bureau of Driver Licensing*, 657 A.2d 134, 136 (Pa. Cmwlth. 1995). Once a licensee has refused, the refusal is not vitiated by the licensee's later assent. *McKenna*, 72 A.3d at 297 n.4 (citing cases).

PennDOT argues that the trial court erred as a matter of law in holding that it did not carry its burden of proof to establish that Licensee refused chemical

8

testing. PennDOT contends that Trooper Fritz offered adequate, credible testimony that Licensee refused to submit to testing, after which refusal he applied for and obtained a search warrant. PennDOT points out that Trooper Fritz's testimony was corroborated by Licensee's testimony that she received the Form to read and would not sign it or agree to give blood until after Trooper Fritz obtained, and let her read, the search warrant. In response, Licensee does not argue that Trooper Fritz's warnings regarding the consequences of a refusal were insufficient; nor does she argue that she was incapable of providing a knowing and conscious refusal. Rather, she argues that she cannot be deemed to have refused chemical testing prior to Trooper Fritz's obtaining the search warrant because she asked some "clarifying questions" and was not given a meaningful opportunity to consent to the blood draw. (Licensee Br. at 10.) We disagree.

In *McKenna*, a Buckingham Township police officer arrested the licensee for suspected DUI after his involvement in a two-vehicle accident. 72 A.3d at 295-96. After transporting the licensee to Doylestown Hospital, the officer requested that the licensee submit to a blood test and advised that if he did not submit to testing, he could lose his license for 12 to 18 months and face criminal penalties. *Id.* at 296. The licensee expressed his belief that he had a right to speak with a lawyer, and the officer read him a written DL-26 Form. *Id.* After the officer read the Form, the licensee continued to ask questions regarding penalties for refusal and why he could not speak to an attorney. *Id.* The licensee would not agree to submit to the blood test. *Id.* After approximately two to three minutes, the officer deemed the licensee's conduct to be a refusal. *Id.* Then, after escorting the licensee back to the police car, the licensee agreed to the blood test. *Id.*

At a *de novo* hearing, the licensee in *McKenna* testified that, despite being read the warnings in the DL-26 Form, he was still confused and was not getting

9

satisfactory answers from the officer. *Id.* at 297. He also testified that he never expressly stated that he would not take the test and was silent or asking questions the whole time in the hospital. *Id.* The trial court sustained the licensee's appeal, finding that the licensee's actions did not constitute a refusal. Specifically, the trial court found that the licensee's questioning of the officer was a legitimate and genuine attempt to clarify his rights, that he never explicitly refused the test, and that the officer did not adequately answer the licensee's questions. *Id.* at 297-98. On appeal to this Court, PennDOT argued that the trial court erred in concluding that the licensee's confusion excused his failure to give an unequivocal assent to the request for chemical testing. *Id.*

We agreed and reversed, holding that the trial court erred in concluding that the licensee's silence and questioning, even if sincere, did not constitute a refusal to submit to chemical testing. We reiterated:

> Thus, [the officer] had no duty to answer [l]icensee's questions to [the l]icensee's satisfaction or spend time ensuring that the [the l]icensee fully comprehended the DL–26 Form, and [the officer] fulfilled his obligation once he read that form to [the l]icensee. Accordingly, whether [the officer] adequately answered [the l]icensee's questions and whether [the l]icensee was legitimately confused as to his rights are irrelevant, and the trial court erred in relying on these factors to hold that [Penn]DOT failed to meet its burden of proof.
>
> Contrary to the trial court's conclusion, [Penn]DOT satisfied its burden of establishing the required elements to sustain an 18–month suspension of [the l]icensee's operating privilege. Once [Penn]DOT fulfilled this obligation, the burden shifted to [the l]icensee to establish that he was not capable of making a conscious and knowing refusal to submit to chemical testing. [The l]icensee does not argue that he was incapable of making a conscious and knowing refusal. Therefore, [Penn]DOT's suspension was proper.

*Id.* at 301.

Here, we similarly hold that the trial court erred in concluding that Licensee's conduct after receiving adequate warnings from Trooper Fritz did not constitute a refusal. It is undisputed, based on the trial court's findings, that Trooper Fritz requested that Licensee submit to chemical testing and that Licensee was adequately advised of the consequences of a refusal. It further is undisputed that Licensee did not expressly consent to the testing until after Trooper Fritz obtained a search warrant and gave it to Licensee to read. Thus, the only *legal* question to be answered is whether PennDOT established that Licensee had a meaningful opportunity to comply with Trooper Fritz's request and, at any point thereafter, gave something "substantially less than an unqualified, unequivocal assent" to testing. *Department of Transportation, Bureau of Driver Licensing v. Renwick,* 669 A.2d 934, 938 (Pa. 1996). Although the trial court accepted Licensee's testimony as credible, it found only that she credibly testified that she was advised that she could be forced to submit to the blood test if a warrant was obtained, that she did not expressly refuse the test, and that she ultimately cooperated. (Trial Ct. Op. at 1.) The trial court also concluded that PennDOT did not present any evidence to corroborate Trooper Fritz's testimony and, therefore, did not carry its burden of proof. This was error.

First, licensees need not expressly refuse chemical testing to be *deemed* to have refused, and their general conduct, including the asking of questions and remaining silent, can constitute a refusal. Second, any subsequent cooperation when faced with a search warrant is irrelevant to the determination of whether prior conduct constituted a refusal. Third, the trial court's focus on whether Licensee had refused testing as of the moment Trooper Fritz subjectively treated her conduct as a refusal and applied for the warrant was misplaced. As our cases clearly demonstrate, the question of whether a licensee's conduct constitutes a refusal is a question of law, and Trooper

11

Fritz's subjective beliefs and application for a warrant are not controlling. It is undisputed that Licensee gave no consent whatsoever until after she read the warrant. Whether her conduct prior to that point was the result of a desire to ask additional questions, a fear of the troopers, a wish to think more on her decision, or other reasons, the evidence of record objectively demonstrates that she gave something far less than an unequivocal assent to chemical testing for the better part of an hour before finally agreeing to give blood. That conduct constitutes a refusal as a matter of law, and the trial court erred in concluding to the contrary.

Further, to the extent that the trial court concluded, or Licensee argues on appeal, that she did not have a meaningful opportunity to consent to chemical testing because she was not given an adequate opportunity to read and understand the written warnings in the Form, we have rejected such an argument. The Implied Consent Law contains no requirement that a licensee have the opportunity to read the DL-26 Form, principally because the duty to inform the licensee of the consequences of a refusal rests only with the officer. *See Blyth v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 834 C.D. 2016, filed June 1, 2017), slip op. at 6.[10] Moreover, the Commonwealth does not have a duty to ensure that a licensee *understands* the implied consent warnings in order to give the licensee a meaningful opportunity to comply. Rather, the Commonwealth need only *convey* the warnings adequately and, if they are so conveyed, meaningfully permit the licensee to consent.

---

[10] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b) and Section 414(a) of this Court's Internal Operating Procedures, unreported panel decisions of this Court may be cited for their persuasive value. *See* Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

12

*See Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 640-41 (Pa. Cmwlth. 2006).[11]

Here, the trial court found that Trooper Fritz conveyed the warnings adequately and requested chemical testing. Licensee refused to sign the Form to acknowledge her receipt of the warnings and would not consent to the blood test. Trooper Fritz then applied for a warrant, which, after approximately 45 minutes, apparently convinced Licensee to consent to the blood test. In these circumstances, and given the significant passage of time, Licensee had a meaningful opportunity to consent to the testing. Thus, and notwithstanding that we accept the trial court's credibility determinations, we nevertheless conclude that it erred in holding that PennDOT did not carry its burden to establish by a preponderance of the evidence that Licensee refused chemical testing. Because Licensee presented no evidence indicating, and does not argue on appeal, that she was incapable of giving consent, PennDOT's imposition of the suspension was proper.

## IV.   CONCLUSION

The trial court erred in concluding that PennDOT did not carry its burden to establish that Licensee refused chemical testing. We accordingly reverse the trial court's order and reinstate the 18-month suspension of Licensee's operating privileges.

_____
PATRICIA A. McCULLOUGH, Judge

---

[11] It also is noteworthy that Licensee at no point stated that she did not understand the consequences of refusing chemical testing. She indicated that she did not understand the differences between Pennsylvania and Delaware DUI law, did not understand that the Form was a "refusal form" (which it is not), and did not recall being advised that she was being asked to "sign that [she] was refusing to give blood (she was not so asked). *See* R.R. at 26a, 28a-29a, 32a. The pertinent question is not whether a licensee refuses to acknowledge receiving the warnings in the Form, but, rather, whether a licensee, who nevertheless understands the warnings, refuses to submit to chemical testing.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lauren Velkoff | : | |
| | : | |
| v. | : | No. 23 C.D. 2023 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

## ***ORDER***

AND NOW, this 5th day of January, 2024, the December 8, 2022 order of the Court of Common Pleas of Lycoming County is hereby REVERSED, and the Department of Transportation, Bureau of Driver Licensing's 18-month suspension of Lauren Velkoff's operating privileges is REINSTATED.

_____
PATRICIA A. McCULLOUGH, Judge