IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Royce Brian Carter, | : | **CONSOLIDATED CASES** |
| Appellant | : | |
| v. | : | No. 1102 C.D. 2023 |
| | : | No. 1103 C.D. 2023 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | Submitted: December 9, 2024 |
| Bureau of Driver Licensing | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH                                        FILED: March 3, 2025

Royce Brian Carter (Licensee) appeals from the August 29, 2023 orders of the Court of Common Pleas of Dauphin County (trial court) denying his Driver's License Suspension appeals from a one-year suspension of his personal and commercial driver's license that had been imposed by the Commonwealth of Pennsylvania, Department of Transportation (Department), Bureau of Driver Licensing (Bureau) under Sections 1547(b)(1)(i) and 1613(d.1) of the Vehicle Code, 75 Pa. C.S. §§ 1547(b)(1)(i), 1613(d.1).[1]  After review, we affirm.

---

[1] Section 1547 of the Vehicle Code, commonly known as the Implied Consent Law, applies to non-commercial drivers and relevantly provides that "[i]f any person placed under arrest for [driving under the influence of alcohol or a controlled substance (DUI)] is requested to submit to chemical testing and refuses to do so . . . , the [Department] shall suspend the operating privilege of the person . . . for a period of 12 months." 75 Pa. C.S. § 1547(b)(l)(i).  Section 1613 of the Vehicle Code, commonly known as the Commercial Driver's License Act, extends the consequences for a refusal under Section 1547 to that same driver's commercial license. *Id.* § 1613(d.1), (d.3).  The commercial disqualification is for the same period as would be imposed for a conviction for the

**(Footnote continued on next page…)**

## I. Facts and Procedural History

The following facts are not disputed. On September 10, 2022, a Pennsylvania State Trooper initiated a traffic stop of Licensee's vehicle. As the Trooper approached the vehicle, he detected a strong odor of both burnt and fresh marijuana. Licensee admitted to having smoked marijuana about five hours prior. The Trooper noticed that Licensee had glassy, bloodshot eyes and dilated pupils. After the Trooper observed a large sum of money in the driver's side door and a large bag of crack cocaine, Licensee was asked to exit the vehicle. At that point, Licensee sped away from the traffic stop and a high-speed chase ensued throughout Harrisburg city. Subsequently, Licensee was stopped, apprehended at gunpoint, taken into custody, read his *Miranda*[2] rights, and placed in the back of a patrol car. Licensee indicated that he understood his *Miranda* rights. While Licensee was seated in the patrol car, the Trooper read him the DL-26B Form verbatim. Within these warnings, the Trooper advised Licensee that he did not have a right to consult with an attorney before submitting to a blood test. The DL-26B Form contains warnings of the potential consequences of a person's refusal to consent to a blood test, including that the individual's license could be suspended for at least one year, and that if convicted of violating 75 Pa. C.S. § 3802(a), the individual will face more severe penalties because of the refusal. It reads in pertinent part as follows:

> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

---

offense for which testing was requested—in this case, a one-year suspension for DUI. *See id.* § 1611(a)(1).

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to a blood test, your operating privilege will be suspended for at least 12 months. . . . If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privileges restored.

4. **You have no rights to speak with an attorney or anyone else before deciding whether to submit to testing**. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

Pennsylvania Department of Transportation, DL-26B Form. (emphasis added).

At no point did Licensee indicate that he did not understand what the Trooper said about the DL-26B Form. After being read the DL-26B Form, Licensee initially asked for an attorney. Thereafter, the Trooper asked Licensee if he would consent to a blood test and Licensee refused. Licensee did not continue to ask to speak with an attorney and simply said "no" to submitting to the testing.

On September 19, 2022, the Bureau mailed Licensee a notice that it was suspending his operating privilege for a period of one year, effective October 24, 2022, at 12:01 a.m., pursuant to Section 1547(b)(1) of the Implied Consent Law, as a result of an alleged refusal to submit to chemical testing on September 10, 2022. With a second notice, the Bureau advised Licensee that it was disqualifying his commercial operating privilege for a period of one year, effective October 24, 2022, at 12:01 a.m., pursuant to Section 1611(a) of the Commercial Driver's License Act, as a result of the same refusal. Licensee filed a license suspension appeal for the suspension of his non-commercial driver's license and a separate license suspension appeal for the disqualification of his commercial driving privilege. A hearing was held on Licensee's appeals on August 29, 2023.

3

The Trooper testified as to the above. Licensee did not testify or present any evidence on his own behalf, including any evidence that he was confused by the order in which the *Miranda* and DL-26B warnings were read. During summation, his counsel argued that, when read together, the *Miranda* warnings and the DL-26B Form *per se* create confusion. Counsel did not argue at any time that Licensee was confused. He argued that the *Miranda* warnings advised Licensee that he had the right to counsel, but the DL-26B Form advised that he did not have the right to speak to counsel. Counsel's entire summation on the confusion issue was as follows:

> But then I think the heavier issue there is this confusion between the *Miranda* warnings and DL[-]26[B Form]. Specifically he was told, you have a right to an attorney. You have a right to an attorney. He was placed in handcuffs, put in the back of a patrol car, continued to be questioned about their ongoing investigation at that point in time.
>
> And then eventually the [T]rooper gets back in the patrol car and then subsequently advises him of this DL[-]26[B] Form where he no longer has a right to speak to an attorney. There was never any clarification, hi, sir, we're dealing with a criminal matter in the context of *Miranda* but now we're dealing with civil sanctions and consequences based on this DL 26[B] Form.
>
> And I think what's significant there is after the first time that the [T]rooper advised [Licensee] of the DL[-] 26[B] Form, what did he do? He asked to speak with an attorney. I mean, the trooper did subsequently ask him again and read the form and there were no questions. He said, no, I'm not going to submit to the test.
>
> But again, I think the ongoing confusion with the investigation that was going on and the fact that he was advised of his *Miranda* warnings initially and then

4

> subsequently advised that he did not have a right to speak to an attorney.
>
> So I don't believe there's any way that the Commonwealth can prove that [Licensee] knowingly, intelligently, and voluntarily refused to submit to this chemical test of blood.

(Reproduced Record (R.R.) at 35a-36a.)

Licensee's counsel also argued that imposing a one-year disqualification of his commercial driving privilege violated the cruel and unusual punishment provisions of the United States (U.S) and Pennsylvania Constitutions. At the conclusion of the hearing, the trial court denied both of Licensee's appeals. A notice of appeal was filed at each docket on September 27, 2023.[3] On November 15, 2023, the trial court issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a).

On appeal,[4] Licensee raises two issues. First, he argues that to provide a motorist with *Miranda* warnings and **then** advise him via the DL-26B Form warnings that he has no right to an attorney before he consents to a chemical test is *per se* confusing – makes it impossible, as a matter of law, for him to make a knowing and conscious refusal to submit to a blood draw. Second, he argues that the imposition of a one-year suspension of his commercial driver's license constitutes cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution and article I, section 13 of the Pennsylvania Constitution.

---

[3] By *per curiam* Order dated January 5, 2024, this Court consolidated the appeals.

[4] This Court's standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203 (Pa. 1999).

5

**1.**

Licensee argues that advising motorists of their *Miranda* warnings prior to the warnings on the DL-26B Form is *per se* confusing. Licensee contends that the trial court erred in denying his appeals because the Trooper read him his *Miranda* warnings while he was initially being taken into custody and then shortly thereafter read him the DL-26B Form when he was in the back of the patrol car. He contends that the Trooper's reading of the *Miranda* warnings shortly before reading the DL-26B Form was *per se* confusing because the Trooper failed, after reading the DL-26B Form, to further clearly explain to him that the *Miranda* warnings, particularly his right to counsel, did not apply to a request for chemical testing under the Implied Consent Law. He contends that "[a]lthough [the] Trooper [] read from the DL[-]26B [F]orm, [Licensee] was never provided clarity on the application of his *Miranda* warnings to the [T]rooper's subsequent request to submit to a blood draw." (Licensee's Br. at 24.)

### A. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*

The warnings on the DL-26B Form are often referred to as the "*O'Connell* warnings" or the "Implied Consent Warnings." In *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989), our Supreme Court held that where a police request for chemical testing is preceded by *Miranda* warnings, the police have an affirmative duty to not only inform the arrestee that his driving privilege will be suspended for one year if he refuses chemical testing, but also that the arrestee does not have the right to consult with an attorney or anyone else prior to deciding whether to perform chemical testing. There, O'Connell was involved in an automobile accident in Montgomery County. Police at the scene of the accident noticed the strong smell of alcohol on O'Connell's breath and conducted a field sobriety test. Upon O'Connell's failure of this test, the officer arrested him for driving under the

6

influence of alcohol. O'Connell was immediately advised of his *Miranda* rights and taken to the police station where he was again advised of his *Miranda* rights in written form. Paragraph 6 of the form asked, "Do you want to talk to a lawyer at this time or have a lawyer with you while we ask you questions?" Initially, O'Connell answered "No," but later he changed his answer to "Yes."

Subsequently, O'Connell was asked to submit to a breathalyzer test. He refused and claimed that he refused because he had not been allowed to speak with an attorney. The officer testified that O'Connell gave no reason for his refusal, that he was permitted to call his lawyer, and that following this call, O'Connell was willing to submit to the test. The officer would not administer the test, however, because he had been unable to personally observe O'Connell for the preceding 35 to 45 minutes; therefore, a refusal was noted.

A refusal was reported to the Department, which imposed the mandatory one-year license suspension pursuant to 75 Pa. C.S. § 1547(b). O'Connell appealed to the court of common pleas, which accepted his testimony as credible and held that O'Connell's refusal was based upon the mistaken belief that he had the right to speak with an attorney prior to submitting to the breathalyzer test. The court of common pleas held that O'Connell could not have made a knowing refusal because his decision was founded upon an understanding of a right which does not exist at law.

The Department appealed to this Court, and we agreed that insufficient evidence existed to support the lower court's determination. The Supreme Court reversed. It held that there was evidence in the record to support O'Connell's position that he was misled into thinking that he had a right to speak to his attorney before taking the breathalyzer test. The Supreme Court specifically explored O'Connell's contention that the entire controversy resulted from the sequential order in which the *Miranda*

warnings were given, noting that "this whole controversy arose because the request to take the breathalyzer test came hot on the heels of the *Miranda* questioning."  *Id.* at 876.  It explained:

> The problem in this case, and many similar cases that have arisen, is that these requests to take breathalyzer tests take place as part of the investigation conducted by police in regards to a drunk driving charge which is criminal in nature. The police proceed with the *Miranda* warnings and at some point (usually when the driver asks to see his lawyer) stop questioning and abruptly change "hats" and ask the driver to submit to the breathalyzer test. If the arrestee hesitates and attempts to exercise his *Miranda* right by asking for a lawyer or asking to make a phone call, a refusal is recorded.
>
> This state of affairs is unacceptable because it is fraught with pitfalls for the arrestee who is not trained to recognize the difference between a civil or criminal investigation and becomes a source of accusation of manipulation by the police over confused individuals who are suspected of having dulled senses.
>
> The law has always required that the police must tell the arrestee of the consequences of a refusal to take the test so that he can make a knowing and conscious choice. *See, Everhart v. Commonwealth*, . . . 420 A.2d 13 (1980); *Ford v. Department of Transportation,* [*Director of*] *Bureau of Traffic Safety*, . . .  406 A.2d 240 (1979).
>
> Accordingly, where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

An arrestee is entitled to this information so that his choice to take a breathalyzer test can be knowing and conscious and we believe that requiring the police to qualify the extent of the right to counsel is neither onerous nor will it unnecessarily delay the taking of the test.

Since the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify the extent of the right of counsel when asking arrestees to take breathalyzer tests thereby insuring that those arrestees who indicate their confusion over their *Miranda* rights, are not being misled into making uninformed and unknowing decisions to take the test.

*Id.* at 877-88 (footnotes omitted)

### B. Post-O'Connell Case Law

Shortly after *O'Connell* was decided, the Department included the "*O'Connell*" warnings in Form DL-26, which required police officers to inform a motorist who is arrested for driving under the influence that his *Miranda* rights do not apply to chemical testing because the request to submit to chemical testing is a civil proceeding and not a criminal proceeding and the right to counsel only applies in criminal proceedings.[5] Since that time, for over 36 years, this Court and our Supreme Court have consistently and routinely held that the warnings provided on the DL-26 Form satisfy as a matter of law the minimum requirements for *O'Connell* warnings. In *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 648 A.2d 285,

_____

[5] In June 2016, after the United States Supreme Court's decision in *Birchfield v. North Dakota*, 579 U.S. 438 (2016), the Department amended Form DL-26 and created Form DL-26B, the version of the form at issue here. The amendment removed any mention of enhanced criminal penalties for refusing a blood test in response to the U.S. Supreme Court's decision in *Birchfield*. *Birchfield* held that coercing a blood draw and compelling a defendant to testify/provide blood evidence against himself or face jail time is unconstitutional. The language about a motorist's right to counsel before submitting to a blood test was not changed.

294-95 (Pa. 1994), the Supreme Court interpreted its decision in *O'Connell* and held "that a proper *O'Connell* warning must include the following information: first, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; second, the motorist must be informed that his *Miranda* rights do not apply to chemical testing." 648 A.2d at 294-95. Thereafter, the Supreme Court decided *Department of Transportation, Bureau of Driver Licensing v. Scott*, 684 A.2d 539 (Pa. 1996). At issue in *Scott* was whether a motorist who had been provided with a legally sufficient *O'Connell* warning could still establish that he was so confused regarding the interplay between the *Miranda* rights and the Implied Consent Law that he did not knowingly or consciously refuse to submit to chemical testing. In rejecting the argument, the Supreme Court summarized the following principles that had been established:

> (1)    the provisions of the Implied Consent Law which require a motorist to submit to chemical sobriety testing or face the temporary loss of driving privileges have the potential to create confusion for the motorist; (2) in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges; (3) the duty of the officer to provide the *O'Connell* warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his *Miranda* rights.

*Scott*, 684 A.2d at 545. The Supreme Court went on to clarify that "once a motorist has been properly advised of his *O'Connell* warnings, a refusal to submit to chemical

10

testing under the terms of the Implied Consent Law will not be excused as unknowing on the basis of the motorist's subjective belief[s] regarding the interplay between the Implied Consent Law and his *Miranda* rights." *Id.* at 546. The Supreme Court explained, "[o]nce an officer provides *O'Connell* warnings to a motorist, the officer has done all that is legally required to ensure that the motorist has been fully advised of the consequences of refusing to submit to chemical testing." *Id.*

Following *Ingram* and *Scott*, this Court has faithfully held that by reading the DL-26 Form (or DL-26B Form), the officer has discharged his duty under the law. We have held that the reading of a DL-26 Form sufficiently informs a driver, who either hears the warnings or reads them herself, that if she refuses to submit to chemical testing, her operating privilege will be suspended. *See Hirsch v. Department of Transportation, Bureau of Driver Licensing*, 702 A.2d 375, 377 (Pa. Cmwlth. 1997) (officer performed his duty under *O'Connell* when he read motorist the warnings from the DL-26 Form); *Quigley v. Department of Transportation, Bureau of Driver Licensing*, 965 A.2d 349, 353-54 (Pa. Cmwlth. 2009) (where the licensee claimed that the warnings were ambiguous, we noted that the licensee never told the officer that she thought the warning advised her that her operating privilege would be suspended only if she had prior refusals or convictions; rather, the only reason she gave for not complying was that she wanted to call her husband first); *Yourick v. Department of Transportation, Bureau of Driver Licensing*, 965 A.2d 341, 345 (Pa. Cmwlth. 2009) (*en banc*) (the DL-26 Form is sufficient as a matter of law to meet the warning requirement under Section 1547(b) of the Vehicle Code, and it appropriately apprised motorist that her license would be suspended if she refused chemical testing); *Park v. Department of Transportation, Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018) (a reading of the DL-26 Form sufficiently apprises the driver, either

11

hearing or reading it, that if she refuses to submit to the chemical test, her operating privilege will be suspended).

Even in the face of these cases, it is Licensee's position that the DL-26B Form has done nothing to clarify the confusion identified in *O'Connell*. He submits that "[w]here a motorist is advised that he has a right to counsel and within moments of being advised of those rights is then told that those rights do not apply are (sic) what equates to *per se* confusion." (Licensee's Br. at 16.)

At the outset, we must address Licensee's right to argue confusion in the first place. By arguing that the sequence of the warnings (*Miranda* then DL-26B Form warnings) is *per se* confusing, Licensee appears to suggest that he did not have to prove confusion about his rights to establish a *prima facie* defense. To the extent that he is raising such an argument, we reject it. First, it is critical that Licensee did not testify or present any evidence that he was confused by the order in which the *Miranda* and DL-26B warnings were read and that the Trooper did not testify that Licensee was confused. During summation, Licensee's counsel simply **argued** that the *Miranda* warnings and the DL-26B Form *per se* create confusion. He never argued that Licensee **was** confused. From an appellate standpoint, that is problematic. Even on appeal, Licensee does not argue that he **was** confused. Instead, he asks the Court to presume as a matter of law that confusion exists, regardless of whether he was confused or not. However, without the assertion that he was confused, Licensee is arguing this legal point in a vacuum. If he had demonstrated in the trial court that he **was** confused, and then argued here that the order in which the warnings were read was *per se* confusing, then perhaps he would have presented an issue we could decide. However, without any factual support that he was, in fact, confused by the order in which the warnings were read, we cannot simply render a decision out of the blue that the warnings are confusing. That would be the equivalent of asking us to issue an advisory opinion in

12

the abstract based on hypothetical or speculative facts, which we cannot do. *See, e.g., Pittsburgh Palisades Park, LLC, v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005) ("The courts in our Commonwealth do not render decisions in the abstract or offer purely advisory opinions[.]").

By way of example, in the *per se* negligence context, a plaintiff cannot recover under a negligence *per se* theory unless it can be proven that such negligence is the "proximate" or "legal" cause of the injury. *Ford v. Philadelphia Housing Authority*, 848 A.2d 1038, 1050 n.11 (Pa. Cmwlth. 2004). A litigant cannot come to court, without any evidence of injury, and ask the court to decide as a matter of law that a particular instance of conduct was negligent *per se* and that, therefore, the court must presume that some sort of injury occurred as a result. To the contrary, the litigant must allege an injury before he raises the negligence *per se* argument.

Here, Licensee did not allege any confusion that was attributable to the Trooper's warnings. Licensee cannot now argue that the juxtaposition of the warnings are *per se* confusing if there is no evidence that he was confused. Accordingly, we find Licensee's assertions regarding his confusion have been waived for failure to present that evidence before the trial court. It would be inappropriate for us to issue an advisory opinion.

To the extent Licensee is arguing that the Commonwealth could not possibly prove his knowing and conscious refusal because the DL-26B Form is *per se* confusing, we must reject that argument, as well. First, every case[6] upon which Licensee relies to support his contention **pre-dates** *O'Connell*, *Ingram*, and *Scott*.

---

[6] *See Department of Transportation, Bureau of Driver Licensing v. Martinez*, 582 A.2d 1160 (Pa. Cmwlth. 1990); *Department of Transportation, Bureau of Driver Licensing v. Fiester*, 583 A.2d 31 (Pa. Cmwlth. 1990); *Commonwealth v. McFadden*, 559 A.2d 924 (Pa. 1989).

13

Those important Supreme Court cases have already endorsed the DL-26B Form warnings and held that the warnings contained in the DL-26B Form satisfy, as a matter of law, the minimum requirements under Vehicle Code Section 1547(b).

Here, by attacking the clarity of the *Miranda* warnings relative to the warnings contained in the DL-26B Form, Licensee has raised no new or novel argument that has not already been addressed by *Scott* and its progeny. The fact remains that the officer must, and did here, state that the *Miranda* warnings do not apply to the request to submit to the blood test, and Licensee did not have the right to speak to an attorney or anyone else before deciding whether to submit to testing. Licensee's attempt to conjure some confusion because of the sequence of the warnings is unconvincing. Thus, for these reasons, Licensee's first claim must fail.

**2.**

Next, Licensee contends that a one-year disqualification of his commercial operating privilege for refusing chemical testing constitutes cruel and unusual punishment. We disagree.

As a commercial driver,[7] Licensee is also subject to the implied consent requirements for commercial motor vehicle drivers found in Section 1613 of the Commercial Driver's Act, 75 Pa. C.S. § 1613. Upon receipt of a report of a chemical

---

[7] A "commercial driver" is defined as "[a] person who is either a commercial driver license holder as defined in section 1603 (relating to definitions) or who is driving a commercial motor vehicle." 75 Pa. C.S. § 102 (relating to definitions). A "Commercial driver's license" or "CDL" is defined as "[a] driver's license issued in accordance with the requirements of this chapter authorizing a person 18 years of age or older to drive a class of commercial motor vehicle." 75 Pa. C.S. § 1603 (relating to definitions). A "Commercial driver's license holder" or "CDL holder" is defined as "[a] person who has been issued a commercial driver's license or a commercial driver learner's permit." *Id.*

14

test refusal, the Department shall disqualify the person who is the subject of the report for a period of one year.  75 Pa. C.S. § 1613(d.1).[8]

In the context of a CDL disqualification, our courts have acknowledged that even though operating a motor vehicle is a privilege and not a right, **a lifetime** disqualification of an individual's CDL can cross the line from a merely remedial civil sanction to a "penal" sanction.  In *Sondergaard v. Department of Transportation, Bureau of Driver Licensing*, 65 A.3d 994 (Pa. Cmwlth. 2013), the trial court sustained the appeal of a CDL holder whose commercial driving privilege had been disqualified under Section 1611(c) for life after he was convicted of his second violation.  Reversing, we explained that "in the context of a **lifetime** disqualification, the effect of Section 1611(c) of the Commercial Driver's Act is penal." *Id.* at 997 (emphasis added).  This is because CDL holders disqualified for life under Section 1611(c) not only temporarily lose their privilege to operate a motor vehicle, but these CDL holders also "lose the right to practice their chosen profession." *Id.* (citing *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 20-21 (Pa. Cmwlth. 2012)).  *Compare Chappell v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 431 C.D. 2022, filed Oct. 11, 2024)[9] (Department's penalty of lifetime disqualification of CDL

---

[8] Section 1613(d.1) of the Commercial Driver's Act provides, in part,

> **(d.1) Disqualification for refusal**.--Upon receipt of a report of test refusal, the [D]epartment shall disqualify the person who is the subject of the report for the same period as if the [D]epartment had received a report of the person's conviction for violating one of the offenses listed in section 1611(a) (relating to disqualification).

75 Pa. C.S. § 1613(d.1).

[9] Under Section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

15

was not grossly disproportionate to driver's two offenses of DUI and, thus, penalty did not violate Eighth Amendment's prohibition against cruel and unusual punishment).

Here, Licensee was not subjected to a lifetime disqualification of his CDL privileges. Rather, he has been subjected to a one-year suspension of said privilege. To constitute cruel and unusual punishment, a sanction must be penal in nature. "The severity of this sanction (lifetime disqualification) transforms what is a remedial law in the context of a one-year disqualification, into a penal law." *Sondergaard*, 65 A.3d at 997. Our courts have not found that a one-year CDL disqualification imposed by 75 Pa. C.S. § 1613(d.1) rises to the level of a penal sanction. Instead, our courts have routinely upheld one-year CDL disqualifications as a remedial sanction. *See, e.g.*, *Cummings v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 829 C.D. 2010, filed Jan. 7, 2011) (unreported); *Hyer v. Department of Transportation, Bureau of Driver Licensing*, 957 A.2d 807 (Pa. Cmwlth. 2008). Based on the legal precedent discussed above, we do not believe that the one-year CDL suspension imposed upon Licensee in the instant matter rises to the level of a "penal" action or criminal punishment that is subject to a cruel and unusual analysis.

Accordingly, the trial court correctly denied Licensee's statutory appeal and held that 75 Pa. C.S. § 1613(d.1) is not unconstitutional.

The orders of the trial court are affirmed.


_____
PATRICIA A. McCULLOUGH, Judge


16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Royce Brian Carter,           :     **CONSOLIDATED CASES**
            Appellant        :
      v.                      :     No. 1102 C.D. 2023
                           :     No. 1103 C.D. 2023
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Driver Licensing    :


## ***ORDER***


AND NOW, this 3rd day of March, 2025, the August 29, 2023 orders of the Court of Common Pleas of Dauphin County are hereby AFFIRMED.


                                      _____

                                       PATRICIA A. McCULLOUGH, Judge